JOHN W. HOOBERRY and others *v.* WILLIAM G. HARDING and others.

## April Term, 1878.

TRUSTS — SPECIAL OR ACTIVE — STATUTE OF USES. — Special or active trusts, which require some act to be done or some duty to be performed, even if the act or duty be for the benefit of the *cestui que trust,* are not within the Statute of Uses, nor executed in the beneficiary, in this state, whether the statute be in force or not.

TRUSTS — RIGHTS OF CREDITORS AS LIMITED BY THE PROVISO OF SECTION 4283 OF THE CODE. — Under the exception embodied in section 4283 of the Code, a judgment-creditor whose execution has been returned unsatisfied cannot, by bill in chancery, subject to the satisfaction of his debt property, real or personal, held under a special or active trust created in favor of the debtor by a third person, by will duly recorded or deed duly registered.

CASE IN JUDGMENT. — Real estate was devised by a mother, by will duly recorded, to trustees in trust, to permit her son, during life, to receive from the rents and profits, for his maintenance, such sums of money as he may deem proper, in such manner, however, as that the same shall not be liable for his debts, or for contracts made by him; and to permit him to exercise such control over the realty, in the renting thereof for one year at a time, as he might deem proper; in such manner, however, that the same shall not be liable for his debts and contracts; and in trust, after the death of the son, to convey the property to any child of the son then living, and if he die without such issue, then to convey to the heirs-at-law of the devisor. *Held,* that neither the interest of the son in the land or in the rents or crops could be subjected by bill in chancery to the claims of his creditors.

*Morris,* for complainants.

*Osment,* for defendants.

THE CHANCELLOR : — The question raised by this record is, whether Philip S. Stump has such an interest, under his mother's will, of the tract of land in the pleadings mentioned, or the rents, issues, and profits thereof, as can be reached, either at law or in equity, by the defendant Jacob Bloomstein as his judgment-creditor.

Rachel Stump, the mother, died in the year 1859, leaving a will, which contains the following provisions :

" I hereby give, devise, and bequeath to my friends William G. Harding and John Shute, Jr., and my brother Philip Shute, and the survivors or survivor of them, and to the heirs of such survivor, his executors, etc., all the residue of my estate, not necessary for the payment of my debts, whether real, personal, or mixed, to have and to hold upon trust, nevertheless, and to and for the uses, trusts, and purposes following, and none other, viz. : That the said William G. Harding and John Shute, Jr., and Philip Shute, and the survivors or survivor of them, shall suffer and permit my son, Philip S. Stump, for and during his life, to have and receive from the rents, issues, and profits of said property, for his support and maintenance, such sum or sums of money, or such amount of any other issues of said property (except the increase of negroes), as he, said Philip S., may deem proper; in such manner, however, as that the same shall not be liable to his debts, or for contracts made by him; and that they, and the survivors or survivor of them, shall suffer and permit said Philip S. to have and to exercise such control over the slaves and real estate hereby bequeathed and devised, in the cultivation and renting of the one or the hiring or working the others, for one year at a time, as he, said Philip S., may deem proper; in such manner, however, only that said Philip S. may derive a support therefrom, and that the same shall not be liable for his debts or contracts; it being my intention to provide for said Philip S., out of the issues of said property, a sum sufficient for his support, of the amount of which sum said Philip S. is to be the judge. And upon trust, further, that said trustees, and the survivors or survivor of them, their heirs, etc., after the death of the said Philip S., shall assign, transfer, and convey said property, with its increase, to any child or children of the said Philip S. that may be living at his death, and should the said Philip S. die without issue living at the time of his death, then they, or the survivors or survivor of them, their heirs, etc., shall assign,

transfer, and convey said property to those who may then be my heirs-at-law, in such proportion as they would have taken by the rules of descent. I hereby declare it to be my intention, by the bequest and devise to trustees above, to provide a support for my son, Philip S., out of my estate, and not to vest in him any interest in said property which may or can be subjected to debts or contracts made or entered into by him. It is further my desire, that said trustees should not be made liable for any waste or mismanagement of said estate, unless such waste or loss shall be occasioned by their own intentional fraud or misconduct."

By the result of the Civil War, the property thus devised was reduced to the plantation on which Philip S. Stump now lives. One of the trustees has died, and the survivors have permitted Philip S. Stump to occupy, use, and control the place as he saw proper, without actively interfering in any way. The farm has become dilapidated, and the taxes are years in arrear. The defendant Bloomstein having recovered judgment against Philip S. Stump, upon an account for necessaries furnished him and his family, caused an execution, issued thereon, to be levied upon some corn, the produce of the farm, and upon Philip S. Stump's interest in the land. The original bill was filed by Stump and his six children, to enjoin the sale of either the land or corn under the levy, to call the trustees into active diligence, or to have a receiver appointed to perform their duties. The defendant Bloomstein has filed a cross-bill, in which he seeks to subject the rents, issues, and profits of the land, and the debtor's interest in the land, to the satisfaction of his judgment.

The argument of the learned counsel of Bloomstein is, that the Statute of Uses is in force in this state, and executed the possession and legal title to the land, for his life, in Philip S. Stump, the beneficiary, whereby the land and its proceeds became subject to his client's execution ; and, even

if this be not so, that the interest of Philip S. Stump in the property, under the devise, was such an interest as could be reached in equity by a judgment-creditor.

Special or active trusts were never within the province of the Statute of Uses.    These are trusts which require some act to be done or some duty to be performed by the trustee, even if the act or duty be for the benefit of the *cestui que trust*.    At an early day, it was held that the statute did not apply where lands are limited to trustees to receive and pay over the rents and profits to such and such persons, for here the lands must remain in the trustees to answer such purposes.    *Symson* v. *Turner*, 1 Eq. Cas. Abr. 383, pl. 1, in note.    So, where the testator devised that the trustees should yearly, during the life of his son, receive the rents of land to be applied for the maintenance of the son.    *Sylvester* v. *Wilson*, 2 Durnf. & E. 444.    So, where the trust was out of the rents, after deducting rates, taxes, repairs, and expenses, to pay such clear sum as remained to a person named, during his life, and after his death, to the use of the heirs male of his body.    *Shapland* v. *Smith*, 1 Bro. C. C. 75.    " Whether the trustees," says Judge McKinney, " do or do not take the legal estate depends chiefly on the fact, whether the testator has imposed upon the trustees any trust or duty the performance of which requires that the estate should be vested in them."    *Ellis* v. *Fisher*, 3 Sneed, 234.    And see *Jones* v. *Lord Say and Seale*, 1 Eq. Cas. Abr. 383, pl. 4; *Bagshaw* v. *Spencer*, 2 Atk. 583; *Wright* v. *Pearson*, 1 Eden, 125; *Stanley* v. *Colt*, 5 Wall. 168; *Porter* v. *Doby*, 2 Rich. Eq. 53; *Mott* v. *Buxton*, 7 Ves. 201; *Aikin* v. *Smith*, 1 Sneed, 309.    "Therefore," says Mr. Perry, " if any agency, duty, or power be imposed on the trustee, as by a limitation to the trustee and his heirs to pay the rents, or to convey the estate, or to preserve contingent remainders, in all these, and in other and like cases, the operation of the statute is excluded, and the trusts or uses remain mere equitable estates."    " So," he adds,

" if the trustee is to exercise any discretion in the manage-- ment of the estate, in the investment of the proceeds or the principal, or in the application of the increase, or if the pur-- pose of the trust is to protect the estate for a given time, or until the death of some one, or until division." Perry on Tr., sec. 305, citing numerous cases. Again he says : " Although the direction may be for the trustees to *permit and suffer* another person to receive the rents, yet if any duty is imposed on the trustees expressly, *or by implication,* the legal estate will remain in them, unaffected by the stat- ute." Sec. 307. His illustrations are, where the direction is to permit A. to receive the net rents (*Barker* v. *Green- wood,* 4 Mee. & W. 421), or the clear rents ( *White* v. *Par- ker,* 1 Bing. N. C. 573), and where the direction to permit A. to receive the rents is coupled with a devise in trust to preserve contingent remainders. *Biscoe* v. *Perkins,* 1 Ves. & Bea. 485. And it is upon this ground that the trustees always take the estate where the trust is in favor of a mar- ried woman, even if it be to permit her to receive the rents or use the property. *Horton* v. *Horton,* 7 Term Rep. 652 ; *Hawkins* v. *Luscombe,* 2 Swanst. 376, 391 ; *Beaufort* v. *Collier,* 7 Humph. 487. The rule is the same in this state, under the decision of our courts construing such trusts, although the Statute of Uses be not in force. The trustee takes exactly that quantity of interest which the purposes of the trust require. *Ellis* v. *Fisher,* 3 Sneed, 234 ; *Murdock* v. *Williams,* 7 Coldw. 612 ; *Harding* v. *St. Louis Life Ins. Co.,* 2 Tenn. Ch. 468.

The will before us may have intended to create the trust- estate for the purpose of preserving the contingent re- mainders, and securing the actual conveyances of the prop- erty, upon the happening of the contingency, to those entitled in remainder. These are purposes which would suffice to vest the trustees with title, although not essen- tial, perhaps, to the effectuating of those objects, under our system of laws. For, the ultimate remainder might be good

as an executory devise, and the legal title might pass, upon the expiration of the prior estate, without actual conveyance. *Aikin* v. *Smith*, 1 Sneed, 309. The fact that these results might follow without the interposition of trustees would not, however, affect the character of the trust, whether active or passive, if the testatrix chose to resort to the appointment of trustees. Be this as it may, the intention of the testatrix to clothe the trustees with some special trusts in relation to the property, pending the life-estate, is beyond question. One purpose had in view was to protect the rents and profits of the land from the claims of the creditors of the beneficiary for life. Whether that purpose was legal or not may admit of doubt, but the purpose is certain. The will, moreover, draws a distinction between the rents which the beneficiary is to receive and the control he is to be allowed to exercise over the land itself " in the cultivation and renting " thereof. If the trustees permit him to cultivate or rent, it is with the restriction that it shall be only " for one year at a time." If they retain the control, then the beneficiary may receive from them such sum as he may deem proper for his maintenance and support. Outside of the legal effect of the intention of the testatrix upon the interest of the beneficiary, and upon the rights of his creditors to reach that interest, the intention is, I think, clear. In other words, the will imposes upon the trustees, " either expressly or by implication," the active duty of managing the estate, or regulating his control and use of it. This may have been solely with a view to protect the incomes or the property from the creditors of the beneficiary, or, in connection therewith, to guard the property against the improvidence of the beneficiary, and to secure it intact and in good condition for the contingent remainder-men. If the former object be nugatory because illegal, the latter object is free from blame, and the law would presume was intended. I am clearly of opinion, therefore, that the trusts of the will are special, vested the

legal title in the trustees, and may be enforced in this court to the extent of securing the payment of taxes and keeping the property in reasonable repair. Tenants in remainder are entitled to come into this court for the purpose of keeping down taxes.

Conceding that the trust is active, the question still remains whether a creditor of the beneficiary may not reach the interest of the latter in the property, or its incomes, for the satisfaction of the debt, through the aid of this court, or the produce of the farm, at law, if the beneficiary is permitted to cultivate it. The general rule undoubtedly is, that the beneficial interest of a party in a trust may be disposed of by his own act, or by operation of law *in invitum*. And I agree with the learned counsel of the creditor in thinking that the power of disposition is an incident of property which cannot, ordinarily, be impaired by the will or direction of a testator or grantor. I further agree that the weight of authority and of reason is, in the absence of positive law to the contrary, that where the party labors under no protecting disability, his property is subject to the claims of creditors. *Harding* v. *St. Louis Life Ins. Co.*, 2 Tenn. Ch. 469; *Campbell* v. *Foster*, 2 Tenn. Ch. 409. "It is a settled rule of law," says Mr. Justice Swayne, "that the beneficial interest of the *cestui que trust*, whatever it may be, is liable for the payment of his debts. It cannot be so fenced about by inhibitions and restrictions as to secure to it the inconsistent characteristic of right and enjoyment to the beneficiary and immunity from his creditors." *Nichols* v. *Levy*, 5 Wall. 441, and cases cited. It is notorious, however, that the English Court of Chancery refused to lend its aid to a creditor to reach the stocks, choses in action, and other property of his debtor not leviable at law, and that it has been followed in this respect by the courts of several of the states of the Union, and, among others, by the courts of this state. *Dundas* v. *Dutens*, 1 Ves. jr. 198; *Erwin* v. *Oldham*, 6

Yerg. 185. I have cited and examined these decisions in Creswell v. Smith, 2 Tenn. Ch. 416. It is also notorious that the tendency of modern legislation is to exempt the property of the unfortunate debtor, within certain limits, from judicial process, and a corresponding tendency has recently been exhibited by at least one of the ablest members of the highest court in the land. Nichols v. Eaton, 91 U. S. 716. It is, of course, within the competency of the Legislature to restrict rights of future creditors to any extent it may, in its wisdom, deem proper. The Legislature of this state has legislated on the subject, by the act of 1832, sec. 11, brought into the Code, secs. 4282–4287. This act was passed in view of the intimations of the Supreme Court in Erwin v. Oldham, made upon the first argument of that case in 1832. See Ewing v. Cantrell, Meigs, 364, and Mr. Meigs's note at the end of the case. The intention was, undoubtedly, to extend the jurisdiction of the Chancery Court in aid of judgment-creditors, so as to enable them to subject to the satisfaction of their debts the property of the debtor which could not be reached by execution, and which, under the decision of Oldham v. Erwin, could not be subjected in equity. But the statute uses the word " property" of the defendant, which by the Code, sec. 51, includes both personal and real property. This statute was borrowed from a previous statute of the state of New York, where the same result was reached as to the meaning of the word " property." Edw. on Rec. 397; Farnham v. Campbell, 10 Paige, 598. See also Chapron v. Cassaday, 3 Humph. 661; Stark v. Cheatham, 2 Tenn. Ch. 302. The construction to be put by the courts upon the proviso of the first section of the act of 1832, Code, sec. 4283, must, consequently, turn in some measure upon the meaning given to the word " property." The act gives the judgment-creditor a right to subject to the satisfaction of his judgment, by bill in this court, " any property," including stocks, etc., held in trust for the debtor, " except when the

trust has been created by, or the property so held has pro-
ceeded from, some person other than the defendant himself,
and the trust is declared by will duly recorded, or deed duly
registered.''

The trust in this case is by will duly recorded.   It is, as
we have seen, an active or special trust, which vests the trus-
tees with the legal title to the land, and with the trust assets
until received by the *cestui que trust*.   There is no remedy,
therefore, by the judgment-creditor, at law, against the realty
or its incomes in their hands, and the trust is one which
will be enforced to the extent of the payment of taxes, and
keeping the property in reasonable repair.   The only ques-
tion is, as to the right of the creditor to reach the surplus
incomes or crops, and that depends upon the construction
which may be put upon the proviso.   Does it enable the
third person, by whose will the trust is declared, to cut off
the rights of creditors, and confine the bounty to the bene-
ficiary?   That is done every day where the beneficiary is a
married woman.   Has the statute placed a person *sui juris*
in the same category?

The Court of Appeals of the state of New York, upon
precisely the same statute and the same *proviso*, has arrived
at the conclusion that the interest of the beneficiary cannot
be reached by a creditor's bill, and, except for another
statute, not even to the extent of the surplus after defray-
ing the necessary expenses of the beneficiary.   *Williams* v.
*Thorn*, 70 N. Y. 270; *Campbell* v. *Foster*, 35 N. Y. 361.
And the Supreme Court of the United States, in a case
which went up from this state, and involved the construc-
tion of our statute, have announced that the Supreme
Court of this state had made the same decision in an unre-
ported case; and this, too, where the trust was of realty.
'' The Supreme Court of the state,'' says Mr. Justice
Swayne, '' decided, in the suits referred to, that this statute
embraces trusts of real estate, and that it exempted the
property in question from liability to the judgment-credit-
ors.''   *Nichols* v. *Levy*, 5 Wall. 444.

The deed considered in that case was made by Beal Bosley, not Basley, as printed in Wallace, to John Nichol, Sr., conveying certain lands to him and his heirs, in trust for Beal Bosley himself during his life, and, after his death, to "permit" J. B. Nichol and John Nichol, Jr., jointly or in severalty, "to have, possess, use, occupy, and enjoy the said property, and receive the rents, issues, and profits thereof, so that neither the said property nor the rents, issues, and profits thereof shall ever be liable for any of the present now existing debts" of the beneficiaries, and, when the debts are extinguished, then to convey the same to the *cestuis que trust* in fee. The deed, it will be seen, creates a trust for the sole benefit of the two persons named as beneficiaries, with the right to possess and use the property, or to receive the rents and profits, to the exclusion of creditors. The trust was to "permit" such use or receipt of profits, and, therefore, passive to that extent, and only special in so far as it was intended to "protect the estate," to use Mr. Perry's language already quoted, for a given time, or until the occurrence of a particular event. The judgment-creditors of the beneficiaries, during the lifetime of Beal Bosley, filed their bill to reach the interest in remainder of their debtors in the land, that interest being clearly a vested remainder in fee. The Supreme Court of the state held, "that said property is not liable for such debts and judgments of the complainants, and that the same may not be subjected to the payment and satisfaction of said debts." The Supreme Court of the United States, upon a bill filed by the beneficiaries to enjoin the sale of the land by executions issued by the same and other judgment-creditors, after the death of Beal Bosley, and levied on the land, held that those creditors who were parties to the previous suit were bound by the decree therein rendered, and that the other creditors were barred of relief by the construction put upon the statute by the state court. "Being a local statute, and involving a sale of property, we," say the Supreme Court of the United States, "adopt the con-

struction which has been given to it by the highest judicial tribunal of the state."

I was of counsel for the Nichols in the litigation in the state court, and my recollection of the scope of the opinion, which was delivered by Judge McKinney, whose opinions in our books show great familiarity with the doctrine of trusts, is in accordance with the conclusion reached by Judge Swayne. It was based upon the statute, and turned upon the power of the donors of property, by will recorded or deed registered, to fix upon it a trust for the benefit of the objects of their bounty, to the exclusion of creditors. I do not remember that the existence of the debts at the creation of the trust, although dwelt upon in the argument, cut any figure in the decision; and I am very certain that no such point, on the nature of the estate of the beneficiaries, as is made by the counsel for the creditors in 5 Wall. 439, to explain the decision, formed any part of its reasoning. My impression is that the principles enunciated fully cover the case before us. And, even if I had doubts on the point, my respect for that "enlightened tribunal," as well as my duty, would require me to adopt the construction put upon the decision by the Supreme Court of the United States. Neither the property itself, nor its rents, incomes, or crops, can be reached by a creditor of the beneficiary, either by the aid of this court or by execution without its aid.

The cross-bill will be dismissed, and the injunction heretofore granted be made perpetual as to the property levied on, without otherwise affecting the judgment. The costs will be paid out of the funds in court, or by the complainants.