IN THE

# COURT OF ERRORS AND APPEALS

OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY

MARCH TERM, 1879.

---

HARDENBURGH and others, executors,

*v.*

BLAIR and others.

1. The jurisdiction of the court of chancery to reach the property of a judgment debtor, held in trust for him, and apply it in satisfaction of a judgment at law, is defined and limited by the acts of 1845 and 1864 (*Rev.* p. 120, §§ 88–91). It does not extend to property held in trust for him or for his use, "where such trust has been created by, or the fund so held in trust has proceeded from some person other than the debtor himself."

2. These statutes should be liberally construed, so as to apply to such property as is enumerated in them, without regard to the means by which it came to the debtor—whether by gift, grant or devise—unless it be such property as is expressly excepted. Property reserved by law to the judgment debtor, and property and things in action held in trust for him, when such trust has been created by, or the fund so held in trust has proceeded from some person other than the debtor himself, are expressly excepted.

3. A legacy in the hands of an executor upon no other trust than to pay it over to the legatee, is not held in trust within the meaning of the exception in the statute. Such a legacy may be reached by a judgment creditor of the legatee, by proceedings under the statute.

42

Hardenburgh v. Blair.

But where a fund is given to executors with directions to invest it, and to pay to a legatee, during his life, the interest and income thereof, at such times, in such manner, and in such amounts as the executors shall deem prudent, there is present the essential qualities of a trust—confidence, discretion and active duties to be performed by the trustee—and the principal fund, and the interest and income thereof, are held in trust within the meaning of the exception in the statute. Neither the principal fund nor the accumulations of interest which the executors have kept back from the legatee for life because they have not deemed it prudent to pay it over to him, can be reached in the court of chancery by a judgment creditor of the legatee for life, and be applied in payment of the judgment, under the statute.

4. A testator gave to his executors the sum of $250,000 in trust, to be kept safely invested, and to pay to his son the interest and income of such sum, at such times, in such manner, and in such amounts as his executors should deem most prudent, for and during his natural life, and upon his death, leaving issue, then to hold the said sum of $250,000 for the benefit of such issue, &c.—*Held*,

(1) That the legatee for life was entitled to the whole interest and income derived from the investment, during his life, subject to a reasonable discretion on the part of the executors as to the times, manner and amounts of the payments.

(2) That accumulations of interest which the executors had in hand, which they had not deemed it prudent to pay to the legatee for life, cannot be reached by his judgment creditors in satisfaction of their judgments, either at law, by supplementary proceedings under the act concerning executions (*Rev.* p. 393), or in equity, under the statute above referred to.

———

On bill for the construction of the will of Charles G. Sisson, deceased.

On appeal from the decree of the chancellor, reported in *Hardenburgh* v. *Blair*, 3 *Stew.* 42.

*Mr. L. Zabriskie* and *Mr. R. Gilchrist*, for complainants.

*Mr. H. S. White*, for Charles G. Sisson, Jr.

*Mr. J. A. Blair*, *pro se*.

*Mr. C. A. Hartshorne*, for judgment creditors.

Hardenburgh *v.* Blair.

Charles G. Sisson, deceased, by his last will, proved April 31st, 1874, among other devises and bequests, made the following :

" I do give, devise and bequeath to my executors hereinafter named, and the survivors or survivor of them, the sum of one million of dollars, in trust as follows : That my executors, and the survivors and survivor of them, shall hold in trust for each one of my four children, Elias H. Sisson, Eva B., the wife of John Hull Browning, Charles G. Sisson, Jr., and Elizabeth B. Sisson, and his or her issue, the sum of two hundred and fifty thousand dollars, to be kept by my said executors safely invested, upon bond and mortgage, or other proper or approved security, and shall pay to each one of my said four children, at such times, in such manner and in such amounts as my said executors shall deem most prudent, the interest and income of such sum of two hundred and fifty thousand dollars so devised in trust for each, during his or her natural life, and upon the death of any or either of my said three children, Eva, Charles and Elizabeth, leaving issue him or her surviving, that the interest and income of such sum of two hundred and fifty thousand dollars so devised in trust for such child so dying, shall be applied and paid, as far as necessary and proper, in the opinion of my said executors, for the maintenance and support of such issue, until all such issue (or all who shall not have died before), shall attain the age of twenty-one years, and no longer, and when all such issue of any of my said three last-named children so dying, or the youngest of such issue living shall attain the age of twenty-one years (or if they shall all be at that age on the death of their parent), that then my said executors, or the survivors or survivor of them, shall pay over and transfer absolutely to such issue the whole of said sum of two hundred and fifty thousand dollars, and the accumulations thereof, if any there be, dividing the same equally between them, if more than one, in such manner that the children of a deceased child of my said three children shall take the share their parent would take if living. And if any of my said three children shall die without leaving issue living at the time of his or her death, or if, so leaving issue, such issue shall all die before the youngest living shall attain the age of twenty-one years, that then such sum of two hundred and fifty thousand dollars so devised in trust for such child and his or her issue, and the accumulations, if any there be, shall be equally divided among my remaining children, and the issue of such as may be dead, in manner aforesaid."

*Mr. Robert Gilchrist,* for appellants.

I. The court of chancery cannot appropriate the property of a debtor to the payment of his debts except under the heads of account, fraud, trust, accident, or mistake, or where the trust has ceased and is not active, or by virtue of some *statutory* authority.

*Disborough* v. *Outcalt, Sax.* 309, 310; *Woodruff* v. *Johnson,* 4 *Hal. Ch.* 729; *Frazier* v. *Barnum,* 4 *C. E. Gr.* 317; *Donovan* v. *Finn, Hopk. Ch.* 59; also, *Bacon* v. *Bonham,* 12 *C. E. Gr.* 209; 21 *Conn.* 1, 8, 9; 1 *Otto* 716.

Nor has the rule ever been otherwise in England. *Rider* v. *Kidder,* 10 *Ves.* 368. See, also, *Nichols* v. *Eaton,* 1 *Otto* 716; *Bacon's Abr., Execution, A ; Gilbert on Executions* p. 37; 3 *Black. Comm.* 411–421; 4 *Kent's Comm.* 429; *English Statutes at Large,* vol. 6, p. 74; 3 *Blackstone (Cooley's)* 419, note (6); 3 *Kerr's Blackstone ;* 2 *Hovenden's Blackstone* (18 *ed.*) 474, *note* 3, not in Chitty's edition; *Freeman on Executions,* § 6; *Higden* v. *Williamson,* 3 *P. Wms.* 132; *Dundas* v. *Dutens,* 1 *Ves.* 198; *Domett* v. *Bedford,* 6 *T. R.* 684; 3 *Ves.* 149; *Brandon* v. *Robinson,* 18 *Ves.* 429; *Wilkinson* v. *Wilkinson,* 3 *Swans.* 515, 522; *Nichols* v. *Eaton,* 1 *Otto* 716; *Piercy* v. *Roberts,* 1 *Myl. & K.* 4.

II. The jurisdiction of chancery in New Jersey, other than that under the heads of account, fraud, trust, accident or mistake, or where a trust has ceased and is no longer *active,* to appropriate a debtor's property to the payment of his debts, depends upon statutes which except out of their operation the case under discussion.

*Disborough* v. *Outcalt, Sax.* 309, 310; *Woodruff* v. *Johnson,* 4 *Hal. Ch.* 729; *Frazier* v. *Barnum,* 4 *C. E. Gr.* 317; *Bacon* v. *Bonham,* 12 *C. E. Gr.* 209.

III. But in this case the right of the receiver to get or sue for anything, is limited to " property or money, or things in action due him (the debtor), or held in trust for him, where the trust has been created by, or the fund held in trust has proceeded *from himself.*"

Hardenburgh v. Blair.

IV. Whatever power a court of equity has over a trust fund to appropriate it to the payment of the *cestui que trust's* debts, it has this power only where there is a clear right in the *cestui que trust* himself to *reach the fund by his own bill*, under the equity head of jurisdiction, called *Trust*.

*Hill on Trustees* 485 ; *Pritchard* v. *Juinchant, Amb.* 126 ; 5 *Ves.* 596, *note ;* 2 *Sugd. Powers* 183 ; *Godden* v. *Crowhurst,* 10 *Sim.* 642 ; *Perry on Trusts,* § 386 (*a*), (*b*) ; *Reife* v. *Geyer,* 59 *Pa.* 393 ; *Wells* v. *McCall,* 64 *Pa.* 207 ; *Twopenny* v. *Peyton,* 10 *Sim.* 487 ; *Piercy* v. *Roberts,* 1 *Myl. & K.* 4 ; *Lewin on Trusts* p. 538 ; *Hill on Trustees* 70, 486, 490, 492 ; *Lewin* 542, 543 ; *Liversey* v. *Harding, Taml.* 460 ; *Collins* v. *Vining, Cooper* (1837–8), p. 472 ; *Brandsen* v. *Woolredge, Amb.* 507 ; *Bennell* v. *Honeywood, Amb.* 708 ; *Mahon* v. *Savage,* 1 1 *Sch. & Lef.* 111 ; *Supple* v. *Lawson, Amb.* 729 ; *Potter* v. *Chapman, Amb.* 98 ; *Burrell* v. *Burrell, Amb.* 660 ; *Bristow* v. *Ward,* 2 *Ves.* 337 ; *Boyle* v. *Bish. of Petersborough,* 1 *Ves.* 299 ; *Att'y-Gen.* v. *Mosley,* 2 *DeG. & Sm.* 399 ; *Prendergast* v. *Prendergast,* 3 *H. L. Cases* 195 ; *Nichols* v. *Eaton,* 1 *Otto* 716 ; *Aleyn* v. *Belchier,* 1 *Lead. Cas. in Eq.* 304, *and notes.*

*Mr. L. Zabriskie,* for appellants.

I. Previous to the statutes of March 20th, 1845 (*P. L.* 141), March 7th, 1850 (*P. L.* 301), and April 12th, 1864 (*P. L.* 704), the court of chancery had no jurisdiction to aid a judgment creditor, in subjecting to the payment of his judgment such property of the debtor as could not be reached by execution, except in cases of fraud, or secret trust amounting to fraud. It would not come to his aid on the bare allegation that the debtor had rights in action or property in trust, which could not be made the subject of levy under an execution at law.

*Disborough* v. *Outcalt, Sax.* 298 ; *Woodruff* v. *Johnson,* 4 *Hal. Ch.* 729 ; *Whitney* v. *Robbins,* 2 *C. E. Gr.* 360 ; *Green* v. *Tantum,* 4 *C. E. Gr.* 105, 6 *C. E. Gr.* 364 ; *Higden* v. *Williamson,* 3 *P. Wms.* 131 ; *Moth* v. *Frome, Amb.* 394 ; *Brandon* v. *Robinson,* 18 *Ves.* 429 ; *Green* v. *Spicer,* 1 *Russ. & M.*

Hardenburgh *v.* Blair.

395; *Piercy* v. *Roberts,* 1 *Myl. & K.* 4; *Graves* v. *Dolphin,* 1 *Sim.* 66; *Snowden* v. *Dales,* 6 *Sim.* 524; *Twopenny* v. *Peyton,* 10 *Sim.* 487; *Godden* v. *Crowhurst, Id.* 642; *Younghusband* v. *Gisborn,* 1 *Coll.* 400; *Lord* v. *Bunn,* 1 *Y. & C.* 98; *Wilkinson* v. *Wilkinson,* 3 *Swans.* 514; *Pym* v. *Lockyer,* 12 *Sim.* 394; *Rockford* v. *Hackman,* 9 *Hare* 475; *Kearsley* v. *Woodcock,* 3 *Hare* 185; *Rippon* v. *Norton,* 2 *Beav.* 63; *Page* v. *Way,* 3 *Id.* 20; *Nichols* v. *Eaton,* 1 *Otto* 716; *Graff* v. *Bonnett,* 31 *N. Y.* 9; *Gott* v. *Cook,* 7 *Paige* 521; *Kane* v. *Gott,* 24 *Wend.* 641; *Hone* v. *Van Schaick,* 7 *Paige* 222; *Grout* v. *Van Schoonoven,* 1 *Sandf. Ch.* 336; *Clute* v. *Boole,* 8 *Paige* 83; *Stewart* v. *McMartin,* 5 *Barb.* 438; *Bramhall* v. *Ferris,* 14 *N. Y.* 81; *Graff* v. *Mason,* 4 *Sandf. Ch.* 357; *Bryan* v. *Knickabacker,* 1 *Barb. Ch.* 409; *Hadden* v. *Spader,* 20 *Johns.* 554; *Donovan* v. *Finn, Hopk. Ch.* 59; *Bogart* v. *Perry,* 1 *Johns. Ch.* 52; *Hendricks* v. *Robinson,* 2 *Id.* 283; *Bayard* v. *Hoffman,* 4 *Johns. Ch.* 450; *Partridge* v. *Gopp, Amb.* 596; *Taylor* v. *Jones,* 2 *Atk.* 600; *Demarest* v. *Terhune,* 3 *C. E. Gr.* 532; *Dundas* v. *Dutens,* 1 *Ves.* 196; *Rider* v. *Kidder,* 10 *Ves.* 368; *Bank of England* v. *Lunn,* 15 *Ves.* 569; *Horn* v. *Horn, Amb.* 79; *King* v. *Dupine,* 2 *Atk.* 60, *note; Frazier* v. *Barnum,* 4 *C. E. Gr.* 316; *Hallett* v. *Thompson,* 5 *Paige* 583; *Graff* v. *Mason,* 4 *Sandf.* 357, 2 *Barb. Ch.* 79; *Stewart* v. *McMartin,* 5 *Barb.* 438; *Graff* v. *Bonnett,* 31 *N. Y.* 9; *Lewin on Trusts* 538; *Hill on Trustees* 485; *Alleyn* v. *Belchier,* 1 *Lead. Cas. in Eq.* 304, *and notes; Perry on Trusts* 248.

*Mr. Chas. H. Hartshorne,* for respondents.

I. The interest of the defendant, Charles G. Sisson, in the fund sought to be reached, is absolute and assignable.

*Wells* v. *Ely,* 3 *Stock.* 175; *Lynch* v. *Utica Ins. Co.* 18 *Wend.* 245; *Gleason* v. *Fayerweather,* 4 *Gray* 348; *Hallett* v. *Thompson,* 5 *Paige* 583; *Livingston* v. *Stickles,* 8 *Paige* 398; *Van Rensselaer* v. *Hayes,* 19 *N. Y.* 68; *Smith Lead. Cas.* 100; *Newkirk* v. *Newkirk,* 2 *Cai.* 335; *McWilliams* v. *Risley,* 2 *Serg. & R.* 507; *Walker* v. *Vincent,* 19 *Pa.* 369; *Hanley* v. *Northampton,* 8 *Mass.* 3; *Schermerhorn* v. *Negus,* 1 *Den.* 448; 2 *Redf.*

Hardenburgh v. Blair.

on *Wills*, § 288 (*note* 30); *Rockford* v. *Hackman*, 9 *Hare* 475; *Keyser's Appeal*, 57 *Pa. St.* 236; *Kœnig's Appeal*, 57 *Pa. St.* 352; *Wilkinson* v. *Wilkinson*, 3 *Swans.* 528; *Graves* v. *Dolphin*, 1 *Sim.* 66; 2 *Redf. on Wills*, § 289; 1 *Jarman on Wills* 816; *Hill on Trustees* 395; *Brandon* v. *Robinson*, 18 *Ves.* 429; *Graves* v. *Dolphin*, 1 *Sim.* 66; *Rippon* v. *Norton*, 2 *Beav.* 64; *Yarnold* v. *Moorehouse*, 1 *Russ. & M.* 364; *Snowden* v. *Dales*, 6 *Sim.* 524; *Piercy* v. *Roberts*, 1 *Myl. & K.* 4; *Younghusband* v. *Gisborne*, 1 *Coll.* 400; *Hallett* v. *Thompson*, 5 *Paige* 583; *DeGraw* v. *Clason*, 11 *Paige* 137; *Smith* v. *Moore*, 37 *Ala.* 330; *Robertson* v. *Johnson*, 36 *Ala.* 197; 10 *Ala.* 328; 27 *Ala.* 175; 2 *Ired. Eq.* 184; *Story Eq. Jur.* § 974 (*a*); *Ames* v. *Clark*, 106 *Mass.* 573; *Rome Exch. Bank* v. *Eames*, 4 *Abb.* (*N. Y.*) *App. Dec.* 83; *Tillinghast* v. *Bradford*, 5 *R. I.* 205; *Palmer* v. *Stevens*, 15 *Gray* 343; *Foley* v. *Burnell*, 1 *Bro. C. C.* 274; *Johnson* v. *Conn. Bank*, 21 *Conn.* 148; *Davenport* v. *Lacon*, 17 *Conn.* 278; *Watson* v. *Cleveland*, 21 *Conn.* 538; *Lewin on Trusts*, § 1; *Hill on Trustees* 488; *Aleyn* v. *Belcher*, 1 *Eden* 132; *Lead. Cas. in Eq.* 304 *and notes*; 4 *Kent Comm.* 330; *Lewin on Trusts* 735; *Wilkinson* v. *Wilkinson*, 3 *Swans.* 528; *Whitford* v. *Rickett*, 2 *Keen* 608; *Kean* v. *Leggett*, 2 *Sim.* 479; *In re Stultz's Trusts*, 4 *DeG. M. & G.* 404.

II. The court of chancery has power, without statute, by force of its inherent jurisdiction, to reach any kind of assignable property, that cannot be taken by execution at law, and to apply it in payment of a judgment against its owner.

*Hadden* v. *Spader*, 20 *Johns.* 554; *Bayard* v. *Hoffman*, 4 *Johns. Ch.* 450; *Hallet* v. *Thompson*, 5 *Paige* 583; *Tillinghast* v. *Bradford*, 5 *R. I.* 205; *Outcalt* v. *Van Winkle*, 1 *Gr. Ch.* 513; *Hays* v. *Doane*, 3 *Stock.* 84; *Bowne* v. *Scudder*, 1 *Vr.* 340; *Donovan* v. *Finn*, *Hopk. Ch.* 59; *Edmonston* v. *Hyde*, 1 *Paige* 637; *Tarbell* v. *Griggs*, 3 *Id.* 207; *Pendleton* v. *Perkins*, 49 *Mo.* 565; *McNab* v. *Heald*, 41 *Ill.* 326; *Story's Eq. Jur.* § 1214; *Trego* v. *Skinner*, 42 *Md.* 426; *Gordon* v.

*Lowell,* 21 *Me.* 251 ; *Bigelow* v. *Society,* 11 *Vt.* 283 ; *Rugby* v. *Robinson,* 10 *Ala.* 702 ; *Iron Co.* v. *Goodal,* 39 *N. H.* 223 ; *Tappan* v. *Evens,* 11 *N. H.* 326 ; *Disborough* v. *Outcalt, Sax.* 309 ; *Woodruff* v. *Johnson,* 4 *Hal. Ch.* 120 ; *Halsted* v. *Davison,* 2 *Stock.* 290 ; *Wells* v. *Ely,* 3 *Stock.* 172 ; *Roberts* v. *Hodges,* 1 *C. E. Gr.* 300 ; *Whitney* v. *Robbins,* 2 *C. E. Gr.* 360 ; *Tantum* v. *Green,* 4 *C. E. Gr.* 105 ; 27 *Ind.* 384.

III. The original power of the court of chancery over this species of property is not divested or affected by the statute—the statute simply prescribing another method of reaching the same property.

*McLeod* v. *Smith,* 1 *Black* 459 ; *Darien* v. *Fairborn,* 1 *How.* 636 ; *U. S.* v. *Hair Pencils,* 1 *Paine* 400 ; *Dash* v. *Van Kleek,* 7 *Johns.* 479 ; *Columbian Manuf. Co.* v. *Vanderpool,* 4 *Conn.* 556 ; *Wallace* v. *Bassett,* 41 *Barb.* 92 ; *Crittenton* v. *Calson,* 5 *Cow.* 165 ; *Jackson* v. *Bradt,* 2 *Cai.* 169 ; *Gooch* v. *Stephenson,* 13 *Me.* 371 ; *Tyson* v. *Postlewaite,* 13 *Ill.* 727 ; *Dugan* v. *Gitting,* 3 *Gill* 138 ; 15 *Ga.* 361 ; *Davenport* v. *Barnes, Pen.* 211 ; *State* v. *Norton,* 3 *Zab.* 38 ; *Tarball* v. *Griggs,* 3 *Paige* 207 ; *Edmerston* v. *Lyde,* 1 *Paige* 638 ; *McDermott* v. *Strong,* 4 *Johns. Ch.* 687 ; *Bay State Iron Co.* v. *Goodhall,* 39 *N. H. ; Halsted* v. *Davidson,* 2 *Stock.* 290 ; 3 *Paige* 207, 234 ; 39 *N. H.* 223 ; *Leroy* v. *Rogers,* 3 *Paige* 234 ; *Ames* v. *Clark,* 106 *Mass.* 573 ; *Hallett* v. *Thompson,* 5 *Paige* 583 ; *DeGraw* v. *Clason,* 11 *Paige* 136 ; *Wells* v. *Ely,* 2 *Stock. supra ; Halsted* v. *Davison, supra* ; *Miller* v. *Mackenzie,* 2 *Stew.* 291.

IV. Assuming that the court has an inherent jurisdiction, independent of statute, to apply the equitable interest of the judgment debtor in payment of the judgment creditor's claim ; then, in this case, the court will direct the executor to apply that equitable interest to that purpose through the receiver's hands.

V. Construction of the statute.

*Hallett* v. *Thompson,* 5 *Paige* 583 ; *DeGraw* v. *Clason,* 11 *Paige* 136 ; *Graff* v. *Bonnett,* 31 *N. Y.* 9 ; *Tillinghast* v. *Bradford,* 5 *R. I.* 205 ; *Outcalt* v. *Van Winkle,* 1 *Gr. Ch.* 513.

VI. The trustees have *no discretion* with the *income already accumulated* and on hand, as against the *receiver*, who represents the *cestui que trust*, or a creditor for value.

*Watson* v. *Cleveland*, 21 *Conn.* 538; *Wells* v. *Ely*, 3 *Stock.* 173; *Bacon* v. *Bonham*, 12 *C. E. Gr.* 209.

VII. The *cestui que trust* is entitled to the *whole* of the *income* of the trust fund; the trustees' discretion is limited to the *times, manner* and *amounts* in which the *whole* income shall be paid.

*Green* v. *Spicer*, 1 *Russ. & M.* 395; *Piercy* v. *Roberts*, 1 *Myl. & K.* 4; *Stephens* v. *Lawry*, 2 *Y.* & *C.* 87; *Cowles* v. *Brown*, 4 *Coll.* 77; *Lewin on Trusts* 758.

DEPUE, J.

This bill was filed by the executors of Charles G. Sisson, deceased, for the aid and direction of the court of chancery in the execution of the trusts declared in the above-quoted (p. 647) clause of the testator's will.

The parties to the suit are Charles G. Sisson, Jr., one of the testator's sons above named, Van Antwerp and Mabie, judgment creditors of the said Charles, and Blair, who was appointed receiver under supplementary proceedings had upon said judgment.

The net income of the fund set apart by the testator for his son Charles, is over $14,000 a year. Of this income the executors have in their hands a considerable sum, which they have kept back from him because they have not, in the exercise of their discretion under the trust imposed on them by the will, deemed it prudent to pay it over to him.

All the defendants answered.

The bill and answers filed present several questions for the consideration and direction of the court:

First. Charles, by his answer, claims that the executors are bound to pay to him the whole income of his share of the said trust funds as fast as it accumulates, and that they have not the discretion to withhold the same, or any part

thereof, from him, whenever he may demand payment thereof.

There is no direction that any portion of the interest or income, which the executors shall not have paid over to the life tenant, shall sink into the residue of the testator's estate; nor that accumulations from such a source shall go to increase the corpus of the fund. The direction for adding accumulations of interest to the principal applies only to the interest and income accruing after the death of the life tenants, which shall not be necessary for the maintenance and support of their issue during minority.

There is, in effect, no difference between the language in which the gift of the interest and income to the life tenant is made, and a gift in express words of the whole of the interest and income. It is an absolute and unqualified gift of the interest and income derived from the fund invested. The executors have a discretion with respect to the time, manner and amounts in which it shall be paid over, but this discretionary power, and the mode in which it shall be exercised, will not abridge or qualify the substantive gift to the life tenant of the interest and income. It is his absolutely, and any accumulations of interest during his life, not paid over to him, will, at his death, go to his personal representatives, and not to his issue, under the testator's will. *Green* v. *Spicer*, 1 *Russ. & M.* 395; *Barber* v. *Barber*, 3 *Myl. & Cr.* 688; *Beevor* v. *Partridge*, 11 *Sim.* 228. The distinction is between a mere power, which is left discretionary with the donee, and a trust in connection with which there is a discretion lodged with the trustee as to the manner in which it shall be performed. Simple powers, which are purely discretionary, are not imperative. Trusts are always imperative, and while a court of equity will not ordinarily interfere with the discretion of a trustee fairly exercised, yet it will not permit the discretion to be so exercised as to defeat the substantial purposes of the trust. 2 *Spence's Eq. Jur.* 81–88; 2 *Lead. Cas. in Eq.* 964, *note to Hastings* v. *Glyn.* The testator does not direct the payment of the accrued interest and

Hardenburgh v. Blair.

income to the life tenant at any stated time, either annually or otherwise. He expressly gives his executors a discretion as to the time, manner and sums in which the interest and income shall be paid over. They are not required to pay it over as fast as it accrues, or whenever demanded. They have a reasonable discretion over the subject, and the life tenant is entitled to the interest and income when collected by the executors, subject to a reasonable discretion on the part of the executors, as to the time, manner and amount of the payments.

Second. Blair claims to have paid to him, out of the accumulated interest in the hands of the executors, a sufficient sum to pay the judgment with respect to which he was appointed receiver. Van Antwerp and Mabie recovered a judgment in a court of law against the testator's son Charles, and Blair was appointed receiver, under supplementary proceedings for discovery, in aid of execution creditors, pursuant to the act concerning executions (*Rev.* p. 393).

The jurisdiction of a court of law to compel discovery of, and apply in satisfaction of a judgment, the property of the judgment debtor, which is not liable to levy and sale under an execution at law, is purely statutory. A court of law has no original or inherent jurisdiction over the subject. Its powers in the premises are such, and such only, as are conferred by statute. Whatever right Blair, as receiver, has in the moneys now in controversy, he must have acquired by force of the statute under which he was appointed. The twenty-fourth section of the act expressly limits the power of the judge to compel discovery, to cases in which the petition therefor shall allege a belief that the judgment debtor " hath property or money or things in action due to him, or held in trust for him, where the trust has been created by, or the fund held in trust has proceeded from himself." If no such property or things in action shall be discovered, the judge is required to dismiss the petition of the judgment creditors with costs. (*Rev.* p. 394, § 27.) But if the examination results

in such discovery that the judge is not compelled to dismiss the petition, then he is required to appoint a receiver " of the property and things in action belonging or due to, or held in trust for such debtor *as aforesaid,* who thereby shall receive authority to possess, receive, and, if need be, in his own name, as such receiver, sue for *such* property or things in action;" and such judge shall order said judgment debtor to convey and deliver to such receiver " all *such* property and rights in action, and the evidence thereof." (*Rev.* p. 394, § 26.) This statute enlarged the powers of courts of law in subjecting the property of a judgment debtor to the payment of the judgment debt. It enabled a court of law, by means of a receiver, to reach property which could not be levied on by execution, such as the choses in action of the defendant, which are incapable of being seized under execution, and property held in trust for him, which could not be levied on and sold under execution. In this respect the powers of the court were increased. But it is entirely clear, from a reading of the act, that its power over money and things in action, held in trust, was extended no further than to trusts created by the debtor himself. *Frazier* v. *Barnum,* 4 *C. E. Gr.* 316; *Mabbett* v. *Williams,* 2 *Keyes* 457; *Campbell* v. *Foster,* 35 *N. Y.* 361; *Freeman on Executions* § 420.

If the moneys in question are held in trust within the meaning of this statute, the trust not having proceeded from the debtor himself, Blair, as receiver, had no power over, and no right to collect or receive them, in virtue of his appointment as receiver, and therefore will not be entitled to any decree to that effect. In that event he has acquired no title or interest in the funds in dispute which this court can aid.

Third. But Van Antwerp and Mabie, the judgment creditors, are also parties to this suit as defendants. They set up their rights as judgment creditors, and claim that in equity the accumulated interest in the complainant's hands belonging to the judgment debtor, is chargeable with the payment of their judgment. Their answer is in the nature of a credit-

Hardenburgh *v.* Blair.

or's bill, and in this way the question, whether these moneys can in equity be reached, and applied in payment of a judgment creditor of the *cestui que trust*, is presented.

The jurisdiction of the court of chancery over this subject is also regulated by statute. The earliest act was that of March 20th, 1845, which was followed by a supplement passed April 12th, 1874. These two acts, in the revision of 1874, were embodied in the chancery act, as sections eighty-eight to ninety-four, inclusive. (*Rev.* p. 120.) By the act of 1845, on the return of an execution issued on a judgment at law, unsatisfied in whole or in part, leaving a balance due exceeding one hundred dollars, exclusive of costs, the plaintiff in the execution may file a bill in chancery to compel discovery " of any property or thing in action belonging to the defendant in such judgment, and of any property, money or thing in action due to him, or held in trust for him, except such property as is now reserved by law, and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof to the defendant, *except when such trust has been created by, or the fund so held in trust has proceeded from some person other than the defendant himself,*" and the court was expressly empowered " to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgment out of any personal property, money or thing in action belonging to the defendant, or held in trust for him, *with the exception above stated.*" (*P. L.* 1845 p. 141). The supplement of 1864 is more specific in the enumeration of the property of the judgment debtor, which, by these proceedings, may be discovered, and by the decree of the court applied in satisfaction of the judgment. It enumerates debts due to the judgment debtor otherwise than for his labor or personal services, or for the labor or services of any member of his family, and money or property in possession or action held in trust for him, or for his use, " *except such property as is now reserved by law, or when such trust has been created by, or*

Hardenburgh *v.* Blair.

*the fund so held in trust has proceeded from some person other than the debtor himself.*" In other respects the last-mentioned act merely regulated the mode of procedure. It gave the chancellor power forthwith, on filing the bill, properly verified, in term time or vacation, to make an order that the judgment debtor do appear before a master to make discovery, under oath, at such time and place as the chancellor should designate, instead of the dilatory and unsatisfactory method of discovery by answer; and authorized the appointment, under some circumstances, of a receiver *pendente lite.* (*P. L.* 1864 p. 704). In both these statutes, money or property in possession or action, held in trust for the judgment debtor is expressly excepted out of the jurisdiction of chancery, " when such trust has been created by, or the fund so held in trust has proceeded from some person other than the debtor himself."

But it is contended, on behalf of the judgment creditor, that, independently of the acts of 1845 and 1864, chancery had a jurisdiction which would enable it to reach the moneys in question and apply them in payment of the judgment debt of the *cestui que trust.*

An examination of the decisions of the English courts will show it to be there settled that an original jurisdiction of this kind did not pertain to its courts of equity. The powers of the court were simply in aid of the judgment creditor, where a trust had been interposed which obstructed the operation of the process of a court of law, and extended only to such property as, save for the interposition of the legal obstacle, might have been reached by such process.

Speaking on this subject, Lord Cottenham said : " What gives a judgment creditor a right against the estate is only the act of parliament, for, independently of that, he has no such right. The act of parliament gives him, if he pleases, the option by the writ of *elegit.* * * * The effect of the proceeding under the writ, is to give the creditor a legal title, which, if no impediment prevent him, he may enforce at law by ejectment. If there be a legal impediment, he

then comes into the court, not to obtain a greater benefit than the law (that is, the act of parliament) has given him, but to have the same benefit which he would have had at law if no legal impediment had intervened." *Neate* v. *Duke of Marlborough*, 3 *Myl. & Cr.* 416.

Mr. Lewin, after an examination of the cases, uses this language: "As equity only follows, and does not enlarge the law, the judgment creditor has no title to relief where the chattel, of which the trust has been created, is not, in itself, amenable to any legal process." *Lewin on Trusts*, 648. In *Taylor* v. *Jones*, 2 *Atk.* 600, which Chancellor Kent said contained the great and leading doctrine in support of the creditor, the debtor had, in fraud of creditors, purchased stock with his own money, and vested it in trustees for the benefit of himself for life, and of his wife for her life, and afterwards for the benefit of his children. On a bill filed by his creditors to have his debts paid out of the stock, it was decreed that the trust estate be sold and applied in payment of the creditors, although the stock was not, at that time, subject to levy and sale under execution at law. The case was one infected with fraud, and the decision of the master of rolls was put on that ground. Now, although fraud is one of the heads of equity jurisdiction, yet *Taylor* v. *Jones*, and several other cases of the same kind, have been denied as contrary to correct principle, by a weight of judicial opinion that entirely destroys their value as precedents. *Lewin on Trusts* 648. The subject has since been regulated by acts of parliament, which expressly make a judgment debtor's equitable interest in lands, and also stock, funds, and annuities held by him in his own name, or in the name of another in trust for him, available for the payment of his debts. 1 & 2 *Vic.* 110; 27 & 28 *Vic.* 112. Under these statutes a judgment creditor, who has sued out an *elegit*, and is unable to obtain delivery of the land in which the judgment debtor has an equitable interest, by reason of the legal estate being outstanding, may apply to the court of chancery to remove the impediment, and for a delivery of

the land in execution (*Hatton* v. *Haywood, L. R.* (9 *Ch. App.*) 229; and may have the order of a judge that stock, funds or annuities standing in the name of the judgment debtor, or in the name of another in trust for him, be charged with the payment of the judgment. 1 *&* 2 *Vic.* 100, § 14. Independently of these statutes, and the statutes relating to insolvent debtors and bankrupts, it is well settled in England, at the present time, that the jurisdiction of chancery in aid of a judgment creditor extends no further than to property of such a nature and description as might have been seized by the process at law if some legal obstacle had not been interposed.

Decisions under the bankruptcy and insolvent acts are inapplicable to the subject now in hand. They were made either upon the language of those acts, or were in furtherance of the policy on which they were framed. The bankrupt act of 13 *Eliz.*, c. 7, § 12, enacted " that the commissioners shall be empowered to assign over all that the bankrupt might depart withal." By the bankrupt act of 5 *Geo. II*, c. 30, § 1, there was assigned " all such effects of which the party was possessed or interested in, or whereby he hath or may expect any profit or possibility of profit, benefit or advantage whatsoever." The act of 6 *Geo. IV*, c. 16, § 63, provided for the assignment for the benefit of the creditors of bankrupts, of " all the present and future personal estate of such bankrupt, wheresoever the same may be found or known, and all property which he may purchase, or which may revert, descend, be devised, or bequeathed, or come to him." Under the insolvent debtor's act the assignment was the voluntary act of the debtor, and as a legal consequence, transferred to the assignee all such rights and interests as were capable of assignment; and, the insolvent debtor's act of 7 *Geo. IV*, c. 57, § 11, provided for the assignment " of all the estate, right, title, interest and trust of such prisoner, both within the realm and abroad, and of all future estate, right, title, interest and trust of such prisoner, in or to any real or personal estate and effects within this realm or

abroad, which such prisoner may purchase, or which may revert, descend, or be bequeathed, or come to him or her." The assistance which the English courts of equity give to the assignee of the bankrupt or insolvent, to enable him to reach trust property or funds, is by virtue of their ordinary jurisdiction, in aid of legal rights conferred by act of parliament.

In New York, independently of enabling acts, it has been held that chancery had jurisdiction to sequester for the payment of debts, property not subject to execution at law when held on a trust created by a judgment debtor, with his own funds, in fraud of creditors. *Bayard* v. *Hoffman*, 4 *Johns. Ch.* 450; *McDermult* v. *Strong, Id.* 688; and *Hadden* v. *Spader*, 20 *Johns.* 554, are cases of this sort. The principle on which these cases rest is, that the debtor has placed his property upon a trust, out of the reach of creditors, in violation of the statute of frauds. But if these cases were well decided, they do not apply to a trust created by a third person for the benefit of the debtor. A trust of that kind, being a mere gratuity, is not in violation of the statute of frauds. The creditors of the beneficiary are neither misled nor defrauded thereby. *Nichols* v. *Eaton*, 1 *Otto* 716. Consequently, in *Donovan* v. *Finn, Hopkins* 59, it was held that a judgment creditor could not, by a proceeding in chancery, have his judgment satisfied out of a legacy given to the judgment debtor, there being no special grounds of equitable jurisdiction. Besides an act almost identical in terms with our statute, the legislature of New York has passed statutes on the subject of uses and trusts, by which the surplus of rents and profits beyond the sum necessary for the education and support of the person for whose benefit the trust is created, is made liable in equity to the claims of the creditors of such person in the same manner as other personal property which cannot be reached by an execution at law. The later New York cases are therefore not pertinent to the subject under consideration, except as they are authorities for the legal signification of the words, "when

43

such trust has been created by, or the fund so held in trust has proceeded from some other person than the defendant himself," which words are common to the statutes of both states.

The earliest and the leading case in this state is *Disborough* v. *Outcalt, Sax.* 298, decided in 1831, and before either of the chancery acts was adopted. In that case Chancellor Vroom held that courts of equity will consider the rights growing out of a judgment and execution at law as legal rights, and that, to warrant the interference of chancery in aid of an execution creditor, there must be some equitable ground presented; the case must be infected with fraud, or it must involve some trust or other matter of peculiar equity jurisdiction. What the character of the trust, in his opinion, should be, to bring it within the cognizance of equity, is apparent from the decision he made. The bill was filed by the complainant, a judgment creditor of Outcalt, to subject to the payment of his debts, lands which, at his request, had been conveyed to his son-in-law. The chancellor says: " The contract was made by Outcalt, and for his own benefit; he was to reside there; he had the management of the property, and procured the consent of his son-in-law to take the deed for the property; still Outcalt did not pay for the property, nor did he secure the payment; his creditors were not deprived of anything; there was no arrangement or transfer of property out of his possession into the hands of another, for the purpose of defeating creditors." On the grounds thus stated, the chancellor held that he could not interfere, and the bill was dismissed.

Next followed *Johnson* v. *Woodruff,* 4 *Hal. Ch.* 120, decided in 1849. The complainants were judgment creditors of of the defendants, whose father, by his will, had devised to trustees a lot in the city of Newark, in trust, for the occupation and enjoyment of the defendant during his life, and, in case he did not choose to occupy the premises then, in trust to permit him to receive the rents, issues and profits. The defendant took possession of the property, and expended, in

Hardenburgh *v.* Blair.

erecting another house on part of the premises, a legacy his father had given to him absolutely. The bill was filed to have the rents and profits of the new house so erected by the judgment debtor, applied in satisfaction of the complainants' judgment. The chancellor held the complainants entitled to the relief prayed for, and decreed that a receiver of the rents of the new house be appointed, and directed that account be made of the value of the use of the ground occupied by the new house, to be deducted from the rents, and that the balance only be paid to the receiver. On appeal, the decree, with a modification limiting its operation to the life of the defendant, was affirmed by this court. In the judgment of affirmance, Chief Justice Green said: " The rule is well settled that a trust estate is not the subject of levy and sale under an execution at law. It was so decided by Chancellor Vroom, in *Disborough* v. *Outcalt*, *Sax.* 298. In that decision this court fully concur. It is equally clear that the trust created by the testator for the benefit of his son, will not be interfered with, nor the trust funds diverted from their destination, for the payment of the debts of the *cestui que trust*, either by a court of law or of equity." *Johnson* v. *Woodruff*, 4 *Hal. Ch.* 730. That case was decided after the chancery act of 1845 was passed. It is an important case, not only on account of the explicit language of Chief Justice Green, defining the powers of the court in assigning the reasons for the judgment pronounced, but also from the care observed in the decree to refrain from impairing any of the rights of the judgment debtor under the trust created for his benefit by his father's will.

In *Whitney* v. *Robbins*, 2 *C. E. Gr.* 360, the subject was considered by Chancellor Zabriskie, sitting as master. He held that the jurisdiction of chancery to collect the choses in action of a judgment debtor, and apply them in payment of his debts, had never been assumed in this state until it was conferred by the acts of 1845 and 1864. In a later case before him, as chancellor, the question

was directly presented for decision. The bill was filed by a judgment creditor, to subject to the payment of his judgment the interest due the defendant on a sum of money which the testator directed to be invested by his executors, the interest whereof he directed to be paid to the judgment debtor, as often as semi-annually, so long as she should remain unmarried. The chancellor denied relief, on the ground that the annuity which was due to the judgment debtor was derived from a fund held in trust for the debtor, which fund proceeded from some other person than the debtor herself. Speaking of the statute, the chancellor said : " It was to enable creditors to reach all the debtor's property, and to prevent his placing any of it in trust for himself, that this act was passed; and the exception was intended to permit any other person to provide a fund for the support or benefit of the debtor, and place it beyond the reach of creditors by placing it in trust." The cases cited are authorities directly in point, which cannot be evaded or explained away. They must be overruled in order to concede to the judgment creditors in this case the claim they have made. In my judgment these cases contain a correct exposition of the law on this subject.

If there were any doubt as to the limit and extent of the jurisdiction of chancery in the premises before the adoption of the statutes, that doubt has been removed by the statutes themselves. They were passed for the purpose of simplifying and making more efficacious the remedy of judgment creditors against the property of debtors, and with such a purpose in view, it is not supposable that the legislature would have curtailed the jurisdiction chancery already possessed, or excepted from the summary proceedings for reaching the debtor's property, a class of property over which chancery was left to exercise its jurisdiction by the tedious process of bill and answer, instead of the expeditious and searching remedy of the personal examination of the debtor, and the appointment of a receiver *pendente lite.* The statute must be regarded as defining the jurisdiction

of the court over trust funds in their application to the payment of debts, exclusive of any other authority in the court; otherwise the language excepting funds held on a trust created by another will be abrogated.

The enumeration in the statutes of what may be taken or collected by the receiver, or applied by the decree of the court in payment of the judgment, is of debts due to the judgment debtor otherwise than for his labor or personal services, or for the labor or services of any member of his family, and property in possession or action held in trust for him. The statute should be liberally construed so as to apply to such property as is enumerated, without regard to the means by which it came to the debtor, whether by gift, grant or devise. But we are not justified in pushing liberality of construction to the extent of overriding the plain language of the enactment. Property reserved by law to the judgment debtor from liability to debts, and property and things in action held in trust for him when such trust has been created by, or the fund so held in trust has proceeded from some person other than the debtor himself, are expressly excepted from the preceding enumeration. This plain language we are not at liberty to disregard. If the money in controversy is a fund held in trust, it is clearly within the legislative prohibition.

In *Wells* v. *Ely*, *3 Stock.* 172, it was held that a legacy given to a third person upon no other trust than to pay it over to the judgment debtor, might be reached by the judgment creditor. The chancellor manifestly was of opinion that money in the hands of the legatee, simply to be paid to the judgment debtor, was money belonging to him, and not held upon any trust. This is apparent from the only authority cited in his opinion (*Lynch* v. *Utica Ins. Co.*, 18 *Wend.* 236), in which case the testator had devised the residue of his estate to his executors and their heirs and assigns, in trust, and after the payment of certain legacies he directed that the residue should be divided into eight equal parts, one of which he gave to his son, who was the judg-

ment debtor; and the court, in its opinion, makes a distinction between clear and simple trusts for the benefit of the debtor, and property in which the debtor has the entire interest, but which was nominally and formally vested in another. The former, it was held, could not be reached for the payment of the beneficiary's debts, but the latter could. That this was the view adopted by the chancellor in deciding *Wells* v. *Ely,* is also apparent from his opinion in *Halsted* v. *Davison,* 2 *Stock.* 290, in which he laid down the principle broadly, that a judgment creditor could not, in equity, subject to the payment of a judgment debt property in which an equitable interest had been secured to the debtor by a declaration of trust, where there had been no fraud, and no property of the debtor covered up to the prejudice of creditors. The observations made upon *Wells* v. *Ely,* are equally applicable to *Bacon* v. *Bonham,* 12 *C. E. Gr.* 209. In both cases it was properly held that a legacy in the hands of an executor, or of a third person, upon no trust but to pay it over, is not property held in trust within the meaning of the statutes. A legacy in the hands of an executor, who has no duty to perform in relation to it but to pay it over, and no discretion as to time of payment, may be recovered in an action at law (*Rev.* p. 581).

But in the present case neither the principal fund, nor its produce, is in the hands of the executors upon a simple obligation to pay. They are expressly required to hold the original fund for purposes of investment, and to pay over its interest or income, in their discretion as to time, manner and amounts. The peculiar and essential qualities of a trust—confidence, discretion and active duties to be performed by the trustee—are present in the trust which the testator has created. Moneys held in a fiduciary capacity, with respect to which such duties are to be performed, and such discretionary power to be exercised, are clearly moneys held upon a trust within the meaning of the statute. The bequests in *Frazier* v. *Barnum, supra;* in *Rider* v. *Mason,* 4 *Sandf. Ch.* 351; *Bramhall* v. *Ferris,* 14 *N. Y.* 41; *Graff* v.

Trustees of Public Schools *v.* City of Trenton.

*Bonnet,* 31 *N. Y.* 9, and in *Campbell* v. *Foster,* 35 *N. Y.* 361, were substantially the same as in this case, and the interest and income of the fund invested were regarded as held upon a trust within the meaning of the statute, the same as the primary fund invested.

Whether, upon considerations of public policy, property to so large an amount as that involved in this suit, should be enjoyed by a debtor without liability for the payment of his debts, is not a matter of judicial cognizance. That subject must be left within the discretion of the legislature for its regulation, if it seems politic or judicious to do so. It is sufficient for present purposes to say, that, in the existing state of legislation, jurisdiction to that end has been withheld from the courts.

In the respect last mentioned the decree should be reversed, but without costs.

Decision unanimously reversed.