MALCOLM CAMPBELL, Receiver, &c., v. MARY E. FOSTER,
ANTHONY HOGUET and ANDREW C. GETTY, Trustees, &c.,
of Mary E. Foster.

It seems that the interest of a beneficiary in a trust fund, created by a person
other than the debtor, cannot be reached by creditor's bill.

The surplus of a trust fund, after defraying the necessary expenses of the bene-
ficiary, are not discoverable in proceedings supplementary to execution.

A receiver in proceedings supplementary to execution cannot maintain proceed-
ings in the nature of a creditor's bill, to subject the surplus of a trust fund,
&c., created by a person other than the debtor, to the payment of the judg-
ment.

THE appeal is from a judgment of the Supreme Court,
rendered on demurrer to the plaintiff's complaint.

The complaint is given, in substance, in the following opin-
ion. The defendant, Mary E. Foster, and the defendants,
Hoguet and Getty, put in separate demurrers, assigning as
grounds of demurrer : 1st. That the complaint does not state
facts sufficient to constitute a cause of action. 2d. That the
plaintiff has no legal capacity to sue. 3d. That there is a
defect of parties plaintiffs and defendants.

Judgment on the demurrer was given for the defendants
at the Special Term. The plaintiff appealed to the General
Term, and the judgment was affirmed. He now appeals to
this court.

*John H. Reynolds*, for the plaintiff.

*George C. Genet*, for the defendants.

WRIGHT, J. The action was by the plaintiff in the char-
acter of receiver of the property of Mary E. Foster, to
subject to the payment of a judgment recovered against him
by A. T. Stewart and others, the income of a trust fund
created by the will of her father, for her use. Miss Foster,
and Hoguet and Getty, averred to be her two trustees under the
will, were impleaded as defendants. The complaint alleged
that on the 3d day of December, 1856, Alexander T. Stew-

art & Co. recovered a judgment against her, in the New York Court of Common Pleas, for $3,031; that the judgment was on the same day duly filed and docketed in the office of the clerk of the city and county of New York, and an execution against the property of the judgment debtor issued to the sheriff of such city and county; which execution has been duly returned by such sheriff wholly unsatisfied; that proceedings, supplementary to the execution, were had in the action, and by an order made by a judge of the New York Common Pleas on the 9th of June, 1857, the plaintiff was duly appointed receiver of the property, equitable interests, rights and things in action of the said judgment debtor; of which order and appointment the defendants had notice; and that the plaintiff has entered upon his duties as such receiver under such order.

It is then averred that the whole judgment (except the sum of $650, derived by order of the before named judge, in the supplementary proceedings,) remains unpaid; that the father of Miss Foster, the judgment debtor, died in October, 1854, leaving a will, wherein he gave to his executors $30,000, in trust, to hold and invest the same during the life of his daughter, to collect the income thereof, and to apply such net income to her use during her life, free from the debts of her husband, in case of marriage, with a gift over on her death; that in February, 1856, the defendants, Hoguet and Getty, were, by the Supreme Court, appointed her trustees under the will, and received the trust moneys; from which, with ordinary care on the part of the trustees in the investment, or loaning of them, an income of $2,100 per annum would be derived; and that the daughter, the judgment debtor, is a single woman, and the income or interest derivable from such trust moneys is more than sufficient for her support, education and maintenance; the sum of $600 per annum being sufficient for such purposes. Judgment was prayed for, that out of the interest and income derived, or thereafter to be derived from said trust moneys for the use of the defendant, Mary E. Foster, there be paid by the trustees to the plaintiff, as receiver as aforesaid, a sum sufficient to

satisfy and discharge the judgment against the *cestui que trust;* and that such payment be made in such sums as, from time to time, shall remain in the hands of the trustees, or be received by them from the income ·or interest of the trust funds over and above the sum of $600 per annum, to be first paid to the *cestui que trust* for her support. On demurrer to the complaint, the defendants had judgment.

I shall not regard it important to consider, at length, the question of the plaintiff's appointment as receiver; preferring to dispose of the case on its general merits. My impressions, however, are strong, that the judgment is not sustainable on the ground of the invalidity of such appointment, which was the main ground on which it proceeded in the court below. There the conclusion was, that the proceeding authorized by section 292 of the Code, to compel a discovery of property of a judgment debtor, after issue and return of execution unsatisfied, was a special proceeding, and that no order was valid which was not issued on the grounds prescribed by the section; that, among these essential grounds, it was provided that an execution shall have issued to the sheriff of the county where the defendant in the execution resides, or, if he does not reside in the State, to the sheriff of the county where the judgment roll is filed; that no such allegation appeared in the complaint, as the residence of the defendant in the county where the execution was issued, and it was to be presumed, therefore, that no such essential fact existed: hence the whole proceedings, and consequently the appointment of a receiver, were void. I cannot concur in this reasoning. Suppose it be conceded that, if the proceeding pursuant to section 292 be void, the appointment of a receiver falls with it; and, further, that no order made under the latter section is valid, in one case, unless an execution shall have issued to the sheriff of the county where the defendant resides, and, in another, to the sheriff of the county where the judgment roll is filed: how can it be declared that the essential fact, as it is called, if applicable to this case, did not exist? It is said, there being no allegation of either fact—

the residence of the defendant in the county where the execution was issued, or his non-residence in the State—in the complaint, it is, therefore, to be presumed that no such fact exists. Which fact? Is it to be presumed that the defendant was a non-resident of the State? If so, clearly the execution was issued to and returned by the proper officer. But there is no legal presumption arising from the omission of an allegation on the subject in the complaint. The complaint states the recovery of a judgment against the defendant in the New York Court of Common Pleas, the issuing of an execution against his property, and the return of such execution unsatisfied; that proceedings, supplementary to the execution, were had, and in which proceedings the plaintiff was appointed a receiver of the defendant's property. If any presumption is to be indulged on the subject, it is, that the execution was issued to the proper officer. At all events, it is not to be presumed otherwise, from the absence of an allegation in the complaint. Upon the whole, then, I think the point raised and argued by defendant's counsel not available, that the complaint shows no cause of action against the defendant in that it does not show any legal or valid appointment of the plaintiff as receiver.

. There may be doubt whether a receiver appointed in supplementary proceedings can maintain a creditor's suit. But let it be considered that he may, or, rather, that a judgment creditor, instituting the proceedings, may, through him and in his name, in a distinct suit, of which a court of equity has cognizance, subject the intangible property of the judgment debtor, accessible to the claims of the debtor's creditors, to the payment of his judgment. What, then, is this case? The father of the debtor (who died in 1854) gave in trust to his executors the sum of thirty thousand dollars, to hold and invest the same during the life of his daughter, collect the income thereof, and apply such net income to her use during her life, with a gift over, on her death, of the principal sum to other persons named. The fund was afterward paid into the hands of the defendants, Hoguet and Getty, whom, it seems, had been appointed by the Supreme Court

trustees under the will, to be held by them upon the speci-
fied trust. It is alleged that one of the defendants (Hoguet)
has assumed the active duties of such trust, and that the
income of the trust fund, with proper management, will
amount to or exceed the sum of twenty-one hundred dollars
per annum. The attempt is to reach the beneficial interest of
the principal defendant, the judgment debtor, in this trust
property. I am of the opinion that such interest is not liable
to the claims of her creditors, and cannot be subjected to the
payment of her debts by a proceeding *in invitum* of the
character instituted. It need not be controverted that, pre-
vious to the Revised Statutes, the income of the fund in
question, or the debtor's interest under a trust of this kind,
might have been reached by her creditors, and compulsorily
subjected to the payment of her debts : although this is not
clear, if, as it had been held, a court of equity had no juris-
diction, after execution at law returned unsatisfied, in the
absence of special circumstances of fraud and trust, to enter-
tain a creditor's suit for the discovery and appropriation of
the debtor's interest in choses in action, legacies and property
which could not be reached by the process of courts of law.
If the Court of Chancery possessed no such power, the cred-
itor had no remedy. Prior to the Revised Statutes, this
question of jurisdiction was a disputed one. Though the
better opinion may have been that courts of equity had an
inherent power over the subject, it was not a settled point,
the decisions being contradictory. (3 R. S., 2d ed., 669;
*Hadden* v. *Spader*, 20 Johns., 554 ; *Donavan* v. *Finn*, Hopk.,
59.) In the revision of the statutes, the legislature, I think,
effectually settled the dispute. In the article of the Revised
Statutes relating to the jurisdiction of the Court of Chancery,
a provision, in two sections, to enable judgment creditors to
reach the choses in action and personal property of the
debtor, and property held in trust for him, was introduced.
(2 R. S., 273, §§ 38, 39). Section 38 provided for a bill for
discovery of any property, money or thing in action belong-
ing, due to, *or held in trust for the debtor*, and for an
injunction restraining the disposition of such property,

" except where such trust has been created by, or the fund so held in trust has proceeded from, some person other than the defendant (the debtor) himself." Section 39 empowered the court to decree satisfaction of the judgment " out of any personal property, money or thing in action belonging to the defendant, or held in trust for him, *with the exception above stated,*" &c. All the authority which the courts now possess to subject such property to the payment of judgments, is derived from this legislation. Before the statute it was an unsettled point whether courts of equity had an inherent power over the subject; and when, therefore, in the language of the chief judge, in *Graff* v. *Bonnett* (31 N. Y., 9), " the legislature came to define the cases, and to prescribe the manner in which intangible personal property should be subjected to the satisfaction of the debts of the owner, the provision ought to be considered exclusive of any other authority for effecting the same object."

I am unable to construe the sections in any other way than as excepting from the operation of a creditor's bill, property held in trust for the debtor where the trust has been created by, and the fund so held in trust has proceeded from, some person other than the debtor himself. The precise power conferred is, to decree satisfaction of the judgment " out of any personal property, money or things in action belonging to the debtor or held in trust for him," except in the case " where such trust has been created by, or the fund so held in trust has proceeded from, some person other than the debtor himself." If there be a valid trust, created by a third person for the benefit of the debtor, and the fund held in trust has proceeded from such third person, such fund cannot be reached by a creditor's bill. This I regard as the true reading of the statute. I know that different intimations have been thrown out as to the effect of the sections, or, rather, judges have taken occasion to express their views (sometimes *obiter*, and not always harmonious) as to the meaning of the *exception* in each, which was inserted by the legislature, the draft reported by the revisers containing no exception. (3 R. S., 2d ed., 669.) The late chancellor's

opinion was, that the legislature designed, by the exception, to protect the interest of a beneficiary in a trust, whose object it was to provide for his maintenance and support, and to the extent necessary for such purpose only. Such a construction seems to me to be purely conjectural. It is to be remarked, however, that no case can be found where the chancellor has spoken of the effect of sections 38 and 39 in which what was said by him upon the point was not *obiter*. The Supreme Court has taken another view, and I think the true one, viz. : that the exception exempts from the jurisdiction of a court of equity trusts for the debtor's benefit, which proceed from, or are created by, some person other than the debtor himself. In *Stewart* v. *McMartin* (5 Barb., 538), a question, precisely similar to that in this case, was presented. In that case, the debtor was entitled to the income of a trust fund created by a deed of her father, executed before the enactment of the Revised Statutes. It was sought, by a creditor's bill, to reach this income. The court held that the sections in question prohibited it being subjected to her debts; that there being a valid trust, created by a third person for the benefit of the defendant, and the fund held in trust having proceeded from such third person, such fund could not be reached by the plaintiff's creditor's bill. " In this case," says Judge PAIGE, delivering the opinion of the court, " the defendant has no control over the trust fund. She has only a beneficial interest in the income thereof, which the donor undoubtedly intended should be applicable to her support and maintenance. It comes within the terms of the exception of the 38th section (2 R. S., 174), and, I think, within its spirit and meaning."

The case of *Bramhall* v. *Ferris* (14 N. Y., 41), was another in which the effect of the sections was considered. The debtor was entitled to a share in the income of a trust fund created by the will of his father, which a creditor sought to reach. The Supreme Court had given judgment for the defendant, on the ground that the debtor took no interest under the will which creditors could reach. The judgment in favor of the defendant was affirmed in this

court. There was a question in the case as to the effect of a codicil to the will, providing that if a judgment should be rendered against the son upon a creditor's bill, the payments of income to him should cease, and the executors were thereafter to expend it for the benefit of his family. Opinions were delivered respectively by Judges COMSTOCK and MITCHELL, in which both concurred in holding that the codicil operated to extinguish the power of the creditor to assert his claim against the income. Judge COMSTOCK held the decision of the court below right in another aspect, viz., that the 38th and 39th sections of the article relative to the jurisdiction of the Court of Chancery precluded the plaintiff from enforcing his claim by a creditor's bill. It may not be strictly correct to say that this was the judgment of the court, as there was another ground on which the case might have been decided. There appears, however, to have been no dissent from this view, and the point was distinctly involved. At all events, it was the construction put upon the statute by a former member of this court, whose opinions on legal questions are eminently entitled to be regarded with consideration. In *Graff* v. *Bonnett* (31 N. Y., 9), the learned judge, in his dissenting opinion, regarded none of the theories upon which it had been attempted to construe the sections so often referred to as sound; and broached one of his own. His opinion was, that the exceptions in the sections were introduced by the legislature to protect the trust fund itself from the pursuit of the creditors, when it had proceeded from a party other than the debtor. The sections, it is to be remembered, as reported by the revisers, authorized a bill for discovery of any property, money or things, in action, belonging or due to the debtor or held in trust for him; and empowered the Court of Chancery to decree satisfaction of the judgment out of any personal property, money or thing in action belonging to the debtor or held in trust for him, which would be discovered, &c. The legislature, in acting upon the report, introduced the exception in each section; and the purpose, the judge says, was not to limit jurisdiction over the subject, but to guard against a possible construction of the gen-

eral words—property held in trust for the debtor—which would allow the trust fund itself to be taken in cases where a relative or other person created a trust for the debtor's benefit. He adds: " It is a common device of fraudulent debtors to convey their property upon trust for their benefit; and hence the statute, in terms, subjects all property and things in action, held in trust for the debtor, to the satisfaction of the judgment; but as a trust created by another for his benefit, would fall within the general words of the act, the trust fund was, by abundant caution, protected by the introduction of the exception." Is this anything more than the purest conjecture as to the legislative intent in adding the exceptions to the sections as originally drafted? There is certainly nothing in the language of the exception, or in its connection, to lead to the conclusion that this intent, by its introduction, was simply to save from disturbance by the creditor, the property itself, embraced in a trust created by a third person for the debtor's benefit. If the purpose was, as is supposed, to protect only the trust property itself, in trusts of that character, from invasion by the creditor, it is certainly most awkwardly expressed. But it is unnecessary to pursue the subject, as the theory of the dissenting judge in *Graff* v. *Bonnett*, for construing the sections, was but his own; the court having disposed of the case on another ground. Indeed, the judge delivering the leading opinion had quite another view as to the effect of the statute, and the intention of the legislature in introducing the exception.

In the case under consideration, the trust was created by, and the fund held in trust proceeded from, the father of the defendant, Mary E. Foster. By the terms of the trust, the executors of the testator were to invest the trust moneys, collect the income thereof, and apply such net income to the use of the daughter during her life. It was a trust created for the support and maintenance of the *cestui que trust*, the daughter of the testator; and her interest in the income of the trust fund was to continue during life. This beneficial interest in the income of the $30,000 placed in trust by her father for her support cannot, I think, be reached upon a

creditor's bill. The case is one excluded and exempt from the scope of this statutory remedy. This is the effect of the sections referred to, as I construe them.

But, if I am in error in considering the 38th and 39th sections as standing in the way of the plaintiff, there are other views to be taken of the general question raised by the appeal, viz.: as to the liability of the debtor's interest to the claims of her creditors. If such interest is not alienable by the judgment debtor, it cannot be taken for her debts. Had the subject of the trust been real estate, the inability of the beneficiary to alien her interest would have been undeniable. The statute authorizes a trust to receive the rents and profits of lands, and apply them to the use of any person during the life of such person (1 R. S., 728, § 55); and declares that no person beneficially interested in a trust of that description can assign or in any manner dispose of his interest. (1 R. S., 729, § 63.) But this is a trust to receive the income of personal property, and apply such income to the use of the defendant; and it is insisted that there is no statutory provision rendering inalienable the interest of the beneficiary in a trust to receive and pay over the interest of money or of personal property. This was the principal question discussed in *Graff* v. *Bonnett* (31 N. Y., 9), and upon which the case turned.

The plaintiff, in that case, had been appointed receiver of the property of William H. Bonnett, in supplementary proceedings. Peter Bonnett, the father of the judgment debtor, by his will, gave to the latter the interest of $15,000, to be paid to him during his life; and, by such will, directed the said sum of $15,000 to be kept invested, and the interest paid to William H. Bonnett during his life. Subsequently to the appointment of the plaintiff as receiver, he brought an action against the executors of Peter Bonnett, claiming that he was entitled, as such, to receive from them the interest accruing on the $15,000 from the time of his appointment. He averred, in his complaint, that the defendants had collected the interest thereon *since* the time of his appointment as receiver, and, although requested to account to, and pay the

sum 'over to him, they had neglected and refused to do so; and demanded judgment that the defendants render an account of, and pay the interest to him. It was, therefore, an attempt by creditors to reach the beneficial interest of the judgment debtor in a trust of personal estate created by the will of his father. If the interest was alienable by the debtor — that is, if it was of such a nature that he could sell and dispose of it, or control it as he pleased, without restriction or limitation, it was conceded that it was such an interest as would be accessible to the claims of creditors. It was property that would pass to an assignee under the bankrupt or insolvent law, and could be reached by a proceeding in equity. But if it was an interest that the *cestui que trust* was inhibited from aliening, it would not be liable to be taken for his debts. Hence, the material question in the case, as stated by Judge HOGEBOOM, was the alienability or inalienability of the interest by the judgment debtor. If alienable, his creditors could reach it; if inalienable, the opposite consequence follows. The late eminent chief judge of this court, while conceding that if it had been an interest in a trust for the receipt of the rents and profits of lands, it would have been an inalienable interest, and hence not liable to the debts of the annuitant, contended with marked ability and earnestness that there was nothing in the written law of the State restraining the alienability of the interest of a beneficiary in a trust to receive and pay over the interest of money or of personal property. He reviewed elaborately the cases in an opposite direction, and demonstrated satisfactorily to himself that they had proceeded upon an erroneous construction of the statute law.

But Judge HOGEBOOM, and a majority of the judges, took a different view of the question, holding, with the late chancellor, that the inalienability of the beneficiary's interest was the same as if the trust was of real estate. (1 R. S., 730, § 63; id., 773, § 2; *Hallett* v. *Thompson*, 5 Paige, 583; *Gott* v. *Cook*, 7 Paige, 531; *Clute* v. *Bool*, 8 Paige, 83; *Howe* v. *Van Schaack*, 7 Paige, 222; *Degran* v. *Clason*, 11 Paige, 136.) "It is undeniable," said the judge, "that if this were

an interest in a trust for the receipt of the rents and profits of lands it would not be assignable; and it has been held in several cases, that the statute which provides that limitations of future or contingent interests in personal property shall be subject to the statutory rules prescribed in relation to future estates in land was, in effect, a legislative application of the same principles and policy to both classes of property; and that, even if the provisions of the statute were not sufficiently comprehensive absolutely to require, as a peremptory injunction of statute law, their application, in all their length and breadth and in the same degree, to both classes of property, the argument to be derived from the general similarity of the legislative enactments in regard to both classes of property, from the similar, if not equal mischiefs to be remedied, and from the general policy of the law, would authorize a court of equity, in the exercise of its acknowledged powers, to apply the same rule of construction to both." He proceeds to say, that the contrary doctrine has been contended for by judges in two cases (*Kane* v. *Gott*, 24 Wend., 641; *Grant* v. *Van Schoonhoven*, 1 Sandf. Ch., 336), in arguments of much ingenuity and force, but that the great preponderance of authority is in the opposite direction; and the rule has been recognized and acted upon for so long a period, that it has become a law of property, and ought not now to be invaded. He added, that if the question were an original one, he "should be of opinion that essentially the same rule should obtain as to the inalienability of estates and interest in both classes of property, and in the rents and profits, and income thereof, as otherwise the restrictions imposed upon the enjoyment and transmission of interests in one class of property, might be readily evaded by a testator by directing its conversion into the other."

I regard this case as settling, in this court, the mooted question of statutory construction, making applicable to trusts of personalty, the provision prohibiting alienation of the interest of the beneficiary in trusts of land; and as affirming the position of the late chancellor as to the non-alienability of the interest of a beneficiary in a trust to receive

and apply the income of personal property to his use. The principle is decisive of the present case; for the interest of the judgment debtor, that the plaintiff is endeavoring to reach, is shielded from the pursuit of creditors.

I do not deem it necessary to pursue the inquiry, whether the surplus of income that may be derived from the trust property in this case, beyond what is required for the suitable support and maintenance of the beneficiary, can be reached by creditors. My own opinion is, that it cannot be, by any proper construction of the statutes. If there were nothing else in the way, I think that sections 38 and 39, of the statute in relation to creditor's bills, form an impediment. But let this pass, and let it be conceded that, if there be any surplus, over and above the amount necessary and proper for the debtor's maintenance and support, it may be taken. It has been held, and, I think, correctly, that this surplus is not properly ascertainable under supplementary proceedings to discover and appropriate the debtor's property to the satisfaction of the judgment, but only in a suit or proceeding where the issue is directly made upon the amount necessary for the debtor's support. If there were an accumulation in the hands of the trustees, beyond what was reasonably necessary for the support of the debtor, taking into view her condition in life, her health, and other circumstances, it might possibly have been reached by a proceeding under section 294 of the Code. Nor can a receiver, in supplementary proceedings, maintain a suit in the nature of a creditor's bill to reach so much of the income of the trust-fund as is not required for the suitable support and maintenance of the debtor. Conceding, however, that he may, when such surplus exists, no such case is stated in the complaint. On the contrary, it is not pretended that any such surplus existed. The allegations of the complaint simply are, that the trustees have invested the fund, from which an income may be derived of $2,100 per annum, and that is more than sufficient for the annual support and maintenance of the *cestui que trust,* the sum of $600 per annum being enough for such purpose. That no cause of action, in this aspect of the case, is stated in the complaint, is very clear.

It is the case of a bill filed for a surplus, confessedly without any existing. Whether any would ever exist, depended upon a variety of circumstances, not to be foreseen.

I think the judgment of the Supreme Court should be affirmed.

Six judges affirm, on the ground that the fund cannot be reached.

Judgment affirmed.