Turley *v.* Massengill.

7L 353
10L 399
2pi 82
4pi 782

W. H. TURLEY *v.* S. S. MASSENGILL *et al.*

1. WILLS. *Construction.* The testator devised to his son certain lands in fee, and afterwards added a codicil, directing that all property previously devised to his son "be vested in A. as trustee, for the use and benefit of my son, and no part of the same is to be subject to execution or other legal process for any debt or liability he may have contracted or may hereafter contract, nor is he to sell the same or any part thereof, but may use the rents and profits for his support and that of my wife, but he shall have the right to dispose of the same by last will and testament." *Held:* 1. The devise created a simple and not an active trust. 2. The son took an absolute fee. 3. Sec. 4283 of the Code does not apply to such a case. Land in which defendant owns the entire legal estate in fee, is not "held in trust for him," though the origin of his estate may have been a devise or conveyance to one designated as a trustee.

2. CHANCERY JURISDICTION. *Construction.* Sec. 4283 (act of 1832) is not a restrictive but an enabling statute. It does not restrict the inherent jurisdiction of the chancery courts to subject equitable estates to the payment of debts, but widens that jurisdiction so as to include the power to subject such stocks and choses in action as could not be reached by execution at law, to payment of the owner's debts. The exception must be construed as a limitation upon the statutory jurisdiction created by that act, and not as restricting the inherent jurisdiction of courts of chancery.

---

FROM GRAINGER.

---

Appeal from the Chancery Court at Rutledge. H. C. SMITH, Ch.

HENDERSON & JOUROLMON and LOGAN & LUCKEY for complainant.

J. T. & J. K. SHIELDS for defendants.

23—VOL. 7.

Turley *v.* Massengill.

FREEMAN, J., delivered the opinion of the court.

This bill was filed by Turley, a judgment creditor of Massengill, with an execution returned *nulla bona,* seeking to subject in some form the property left by the father of said Massengill to his debt.

An answer, containing a demurrer, was filed by the respondents, and the case heard on the demurrer, which was overruled, and an appeal allowed by the chancellor, so that the case stands before us on the questions of law alone raised by the demurrer.

The questions to be decided depend on the will and codicil thereto of the father of respondent Massengill, as set out in the bill of complainant, with other allegations, which we proceed to give.

By the will of the father, Robert Massengill, made in 1861, he devised and bequeathed his property by the 6th clause as follows: "To my son, S. S. Massengill, I give all the remainder of my estate, both real and personal, of every description whatever, charging him with the payment of all my just debts, and solemnly enjoining upon him to take care of and support his mother on the home farm, and to observe towards her in the future the same tenderness and affection which has so signally marked his conduct in the past. I also request of him that he will not sell the homestead of land or any part thereof, but that he will keep it as a home for himself and for those to come after him. I make no provision for my beloved wife, except that she shall reside in the old family mansion with our son Sterling, feeling doubly

confident that his kindness and generosity will amply (supply) her wants."

In 1864, a codicil was added to this, as follows: "Whereas, I, Robert Massengill, of the county of Grainger and State of Tennessee, have made my last will and testament in writing, bearing date 31st of December, 1861; now, therefore, I do by this my writing, which I hereby declare to be a codicil to my last will and testament and to be taken as part thereof, order and declare that my will is that all the property of every kind bequeathed to my son, S. S. Massengill, in the 6th clause of the foregoing will, be vested in Dr. John W. Thornburg as trustee, for the use and benefit of my said son, and no part of the same is to be subject. to execution or other legal process for any debt or liability he may have contracted or may hereafter contract, nor is he to sell the same or any part thereof, but may use the rents and profits for his support and that of my wife, E. H. Massengill, but he shall have the right to dispose of the same by last will and testament; and lastly, it is my will and desire that this codicil be annexed to, and made a part of my last will and testament as aforesaid, to all intents and purposes."

It is charged that Branner, a brother-in-law, assumes to be trustee as successor. to Thornburg—how appointed is not stated—and that he claims to control the property and repels all creditors, defying the officers of the law to levy on it for Massengill's debts. The mother is dead, so that the charge, whatever it may be, in her favor, is out of the way.

It is charged, that under the will, the son received
a large and valuable farm, on which he resides, in
Grainger county, and that on this farm is situated one
of the most valuable merchant mills in East Tennessee,
from which a large income is annually derived, all of
which defendant enjoys, and claims to hold free from
liability to his creditors.     The question is, whether
this property is or can be made liable for his debts,
or shall he enjoy all the fruits of ownership, and yet
hold it free from the responsibilities attaching to owner-
ship of property in general—liability to creditors for
satisfaction of the debts of the owner?

If the gift had remained as in the original will, a
direct gift of the entire estate to the son, with only
the request that he should not sell the homestead, or
any part thereof, or even a condition had been annexed
to the devise, forbidding the devisee, it being a devise
of a fee simple estate, such request or condition would
be void, as repugnant to the estate granted.     This
seems to have been recognized as settled law from the
days of Lord Coke at least down to the present, and
is laid down and sustained by an unbroken current of
authorities.     A few of the American cases may be
referred to.     An injunction not to sell an estate for
any pretext whatever:     *McDougal* v. *Brown*, 21 Mo., 57.
A condition that the devisee should not alien it: *Reif-
snyder* v. *Hunter*, 7 Harris' Pa. R., 41.     A proviso
attached to a fee that the devisees should not sell to
each other, is held void, as too general in its effect:
*Schermerhorn* v. *Negus*, 1 Denio, 448.     Also a restraint,
that the devisees should not sell until the estate, which

was given to several devisees, should be assigned in severalty, was held void, as too general and extended in its operation—there might never be such an assignment: *Hale* v. *Tulfts*, 18 Pick., 455. See cases collated, both English and American, Am. Law Reg., vol. 9, 395, *et seq.* See also Judge Cooper's opinion in the case of *Hooberry* v. *Harding*, 3 Tenn. Ch. Rep., 677, and authorities there cited. It is a settled rule of law, says Judge Swayne, in the case of *Nichols* v. *Levy*, 5 Wall., 441, that the beneficial interest of the *cestui que trust*, whatever it may be, is liable for the payment of his debts. It cannot be so fenced around by inhibitions and restrictions as to secure to it the inconsistent characteristic of right and enjoyment to the beneficiary and immunity from his creditors.

If these principles be settled, (and we think they are by all authority), then the question is, whether, by the simple device of giving the naked dry legal estate to a trustee (Dr. Thornburg in this case) for the use and benefit of the devisee, the limitation can be made more effective—" that no part of the same is to be subject to execution or other legal process for any debt or liability he may have contracted or may hereafter contract, nor is he to sell the same or any part thereof." We think, for several reasons, such restrictions and inhibitions must be held as void, because repugnant to the estate granted, and because contrary to the letter and spirit of our statutes and laws, which make all property of a party liable for his debts, except such as is specially by those laws exempt in favor of poor persons: See *Hawkins* v. *Pearce*, 11 Hum., 44.

This being the general law of the land, the question is simply whether a party can so convey property to one *sui juris*, as that it shall be held exempt from liability declared by law; in other words, whether property can be exempted by a party because he chooses to say so, when the law has declared otherwise. We think but one answer can rightly be given to this question, and that is, the law must be the rule of exemption, and not the will of a testator or other party conveying the estate. That the devisee is intended to have and enjoy the entire estate in this case, and all the rents, profits and emoluments of the estate, is beyond question; for the testator adds to the above the provision, that he may use the rents and profits for his support, and shall have the right to dispose of the estate by last · will and testament, thus giving him not only the estate for life, but also the right of disposition untrammeled at his death.

We need not discuss or decide what would be the effect in a case of an active or special trust, created by the testator in favor of the devisee, by will duly recorded or by deed registered—no such case is before us. The trustee has no control over the property whatever, no duties to perform, no right to receive the rents or profits—consequently no trust as to their disposition. It is simply the case of a naked dry legal title vested in a trustee, for the use and benefit of the devisee, with no duties or trusts imposed by reason of such vestiture of title; sec. 4283 has no application to such a case. There never was any necessity for discovery in such a case in aid of the

execution from a court of law, in order to its being rendered liable to legal process: *Smitheal* v. *Gray*, 1 Hum., 495; *Thomas* v. *Walker*, 6 Hum., 95. This case, however, may well rest on the proposition, that the object and purpose of the trust, or conveyance to the trustee, is to secure and hold for the beneficiary, an estate, or to preserve limitations on the estate that are void, as being repugnant to the estate granted, which is an absolute fee, and also as contrary to law and the policy of the State. These objects failing, the trust is unnecessary and ceases with the failure of its object and purpose. The trustee only takes exactly the estate or quantity of interest which the purposes of the trust require. There being no legal purpose to be served in this case, the trust does not take effect, and the estate must be held absolute in the beneficiary: *Ellis* v. *Fisher*, 3 Sneed, 231.

A court of chancery, however, may, as we think, in this case be invoked, in order to clear up the title and remove an apparent difficulty in effectuating the legal remedy of the creditor, and have the judgment of the court upon the amount and character of the estate of the defendant, as is provided for in this case, so that a purchaser may know what estate he obtains should he desire to purchase the same.

For these reasons we affirm the decree of the chancellor overruling the demurrer, and remand the case to be further proceeded with.

Upon rehearing, GEORGE ANDREWS, Sp. J., delivered the following opinion:

We are satisfied that the disposition heretofore made of this case is correct.

The trust expressed in the codicil of the will of Robert Massengill in favor of his son, was not a special or active trust. The person named as trustee had no duties to perform under it, and there was no necessity that any estate should remain in him. And as long as no duty or function was imposed on him requiring any physical or mental operation, we do not consider him as assigned by law to occupy a passively obstructive position merely to protect the estate against creditors. The effect of the will and codicil was, therefore, to vest the legal title to the property devised in S. S. Massengill.

This legal title was an estate in fee simple. By the terms of the will and codicil, it is evident that an estate in fee passed, and was intended to pass. There is no indication of any contrary intention: Code, sec. 2006. There is no devise over, and no mention of a life estate or remainder, or of a reversion in the heirs of the testator. In the body of the will, the testator gave to his son an absolute and unqualified estate in fee in the land. In the codicil he devises to the trustee "all the property of every kind bequeathed to my son." In other words, the testator devises to the trustee the same estate in nature and extent which he had previously devised to his son; and that was an estate in fee simple. This result is

sufficiently attained without reference to the recognized rule that a devise of the rents and profits is in legal effect a devise of the land.    S. S. Massengill, there-fore, took the legal estate in fee in the land devised.

This being so, the provision in the codicil that the property was not to be sold or be subject te execu-tion, was repugnant to the estate devised and was void, and the property may be subjected to the claims of the creditors of S. S. Massengill.

If this conclusion be correct, it might be unneces-sary to consider the construction to be placed upon the exception in sec. 4283 of the Code, since that ex-ception relates only to property "held in trust for" the defendant.    Land in which the defendant owns the entire legal estate in fee is not "held in trust for him," though the origin of his estate may have been a devise or conveyance to òne designated as a trustee.

But inasmuch as an able and earnest argument, and the principal argument for defendant in this case, has been made upon the construction to be given to the section of the Code just mentioned, and our de-cision of the case is based as unhesitatingly upon this point as upon the other, we proceed to dispose of this question.

Section 4283 of the Code is as follows: " The creditor, whose execution has been returned unsatisfied in whole or in part, may file a bill in chancery against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except

when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded, or deed duly registered."

It is insisted on behalf of the defendant that the effect of the exception in the section above quoted, is to deprive the chancery courts of this State of all power to decree satisfaction of the indebtedness of a *cestui que trust* out of property held in trust for him, in all cases in which the trust has been created by some person other than the debtor himself. We do not thus understand this statute.

This section is brought into the Code from the original act of 1832, ch. 11, sec. 1 (Caruthers & Nicholson, 222), and was adopted by our Legislature, with some modifications, from a statute of the State of New York, passed in 1828. It is well known that the act of 1832 was passed by our Legislature in consequence of the decision in the chancery court of the case of *Erwin* v. *Oldham*, 6 Yer., 185. In that case it was decided that a court of chancery had no power to subject corporate stock standing in the name of the debtor, to the payment of his debts, for the reason that there was no law permitting an execution to be levied on such stocks, and that the jurisdiction of equity was ancillary to that at law, to remove impediments to the operation of the execution.

Courts of equity in this State do not derive their power to subject equitable estates to the payment of debts, from this statute. This jurisdiction existed independently of statute, and the general doctrine that

a court of equity has jurisdiction to subject equitable estates to the payment of debts, in cases where the legal estate would be subject to execution, has not been disputed in the case of *Erwin* v. *Oldham,* or in other decisions of this court: *McNairy* v. *Eastland,* 10 Yer., 316; *Stark* v. *Cheatham,* 2 Tenn. Ch. R., 300; Story Eq. Jur., sec. 1216 *b.*

This statute came under discussion in 1836, soon after its enactment, in the case of *Garget* v. *Scott,* decided by Judge Turley, who explains its object thus: "As we have seen, the intention of the Legislature was (inasmuch as they had freed the body of the debtor from execution) to make all of his property, of every kind and description, liable for his debts; and that in order to do so, they vested the courts of chancery with an extent of jurisdiction never before exercised by them, by which *stocks and debts* were put upon the same footing with *equitable estates,* and made liable by decree to execution."

The object of the statute was to enable courts of chancery to reach, not equitable estates generally, but to subject such stocks and choses in action as could not, when held by the debtor himself, be reached by execution, and it was an enabling statute and not a restrictive one.

And as the tendency of our legislation has been to enlarge the jurisdiction of courts of equity, we find that when the act of 1832 came to be incorporated in the Code, a provision, said to be derived from this statute, was enacted as sec. 4282, declaring that courts of chancery "have exclusive jurisdiction to aid a cred-

itor by judgment or decree to subject the property of the defendant which cannot be reached by execution, to the satisfaction of the judgment or decree, under provisions of this Code."

As originally enacted, the second section of the act of 1832, now sec. 4284 of the Code, provided that the court should have power to decree satisfaction " out of any property, stock, money, or things in action belonging to the defendant, or held in trust for him, *with the exception above stated, which shall be discovered by the proceedings in chancery.*"

This clause, copied from the New York statute, is relied upon in the case of *Campbell* v. *Foster*, 35 N. Y., 366, as showing that the power to decree satisfaction was purposely made commensurate with the power to compel discovery.

But when these two sections of the act of 1832 were brought into the Code, the Legislature, while retaining in substance the whole of sec. 1, as Code, sec. 4283, and enacting sec. 4282 as a wider declaration of the jurisdiction of the court, significantly struck out the second section of the act in re enacting it as sec. 4284, the words above quoted in italics, thus evincing an intention that the exception in sec. 4283 should not operate as a limitation on the power of the court to decree satisfaction out of any legal or equitable estate of the defendant that the court might find within its reach.

This exception in sec. 4283 appears to relate to the right to compel a discovery, and not to the relief that a court of equity shall be competent to give, inde-

pendently of the discovery; and has no reference to a case in which discovery is not essential to the relief sought. The last clause in the exception, requiring the declaration of trust to be of record, was added by our Legislature as a limitation upon the exception, when the statute was first enacted, it not being a part of the New York statute, apparently for the reason that a bill of discovery would be unnecessary when the declaration of trust was of record, but might be necessary when it was not.

It will be borne in mind also, that real estate held by one person in trust for another has, in this State, always been subject to execution, and the aid of a court of equity was not necessary to enable the creditor to reach such interests, unless to obtain discovery, clear the title, or remove some obstacle in the way of the execution: 1 Yer., 9; 1 Hum., 496; 6 Hum., 95; 2 Cold., 12.

The complainant, by his bill in this case, is not proceeding under the new jurisdiction conferred by sec. 4283 of the Code, but is merely doing what he had the right to do independently of that section, seeking the aid of a court of equity to enforce his legal right.

The same exception in the New York statute has given rise to much discussion and to great difference of opinion in the courts of that State. See *Campbell* v. *Foster*, 35 N. Y., 367, where the construction is given to that statute which the defendant in this case claims should be given to our own. The fact that that case, which was decided in 1866, nearly forty

Turley *v.* Massengill.

years after the statute was passed by the Legislature of New York, appears to be the first case in which the construction of their statute was authoritatively settled, would seem to indicate that the question must have been a doubtful one in that State.

But whatever may be the true construction of the statute of New York, we are satisfied that our Legislature did not intend, in the enactment of the statute now in question, to limit the power of courts of chancery to decree satisfaction out of the debtor's equitable estate in cases where that jurisdiction already existed.

In short, the intention of the Legislature in the enactment of the statute of 1832 and its re-enactment in the Code, evidently was to enlarge, and not to restrict the jurisdiction of equity in this class of cases. The history of the original enactment, and the fact that the changes. made in the form and phraseology of the statute in its transfer from the statute of New York, and in its re-enactment in the Code, were all in the same direction, show this; and this is in accord with the whole tendency of our legislation from that time to the present.

We are satisfied that the exception contained in sec. 4283 must be construed as a limitation upon the new jurisdiction granted by that statute, and not upon the jurisdiction which courts of chancery in this State have from the first possessed and exercised.

It follows, that the property devised for the use and benefit of S. S. Massengill is liable for his debts, and that the demurrer to complainant's bill was properly overruled.