New York County.—Hon. D. G. Rollins, Surro-
gate.—June, 1886.

Young ·v. Purdy.

*In the matter of the judicial settlement of the account
of Samuel M. Purdy, as trustee of a trust created
by the will of Anthony Rabel, deceased.*

Testator, who died in 1848, by his will bequeathed the residue of his
estate, both real and personal, to the executors, in trust to hold and
manage the same during the lives of his widow and son, receive the
income, and pay the same, in specified proportions, to the widow, dur-
ing her life, and his five children; with a direction for the division of
the *corpus*, upon the death of the son and widow, among the remain-
ing children.  In 1868, a daughter, M., in consideration of a loan, to
her, of $15,000, funds of the estate, executed, in conjunction with her
three children, an assignment of all her interest in decedent's estate,
to an executor of, and trustee under the will, who was thereby author-
ized to hold and manage the same, and the proceeds thereof, until the
loan should be repaid with interest, and, in case of default, to apply
and appropriate the subject of the assignment to the payment of the
indebtedness; which arrangement was carried into effect, M.'s share
of the income being withheld by the trustee and distributed among the
other beneficiaries, until he was discharged and a successor was ap-
pointed, by whom the same course was adopted.

At the death of M., which occurred in 1885, after that of the widow and
son, the former was indebted to the estate in a sum far greater than
the total income which had accrued for her benefit since the last ac-
counting, and which had passed through the hands of the trustee.
Upon the accounting of the trustee, with a view to a final distribu-
tion of the estate, two of the three children of M., as executrices of
her will, interposed various objections to the account, contending, *inter
alia*, that the withholding of M.'s fifth of the income was a violation
of the terms of the will.—

*Held*, that objectors had no lawful claim against decedent's estate, except
as to the excess, if any, of the value of M.'s entire interest therein,
above the amount of her indebtedness; and that the objection should
be overruled.

Upon a judicial settlement of the account of a testamentary trustee, pre-

liminary to a final distribution of the principal of the trust, it appear-
ing that one of the *cestuis que trustent* had executed to another, since
deceased, an assignment, absolute upon its face, of his entire interest
in the estate, the assignor submitted an affidavit setting forth that the
instrument was intended by the parties thereto, merely as collateral
security for a loan.—

*Held,* that, in the decree to be entered upon the accounting, the assign-
ment must be recognized as valid, the Surrogate's court having no
jurisdiction either to reform it, or to pass upon any equitable claim of
the affiant against the representative of his assignee.

HEARING of objections, interposed by Maria A:
Young and another, executrices of the will of Maria
Valentine, a deceased beneficiary under the will of
decedent, to an account filed by the acting trustee of
a trust created by the latter will. The facts appear
sufficiently in the opinion.

JAMES R. MARVIN, *for trustee.*

E. F. BROWN, *for objectors.*

A. A. REDFIELD, *special guardian.*

THE SURROGATE.—This testator died in 1848, leav-
ing a will by which he bequeathed to the persons
whom he appointed his executors his entire residuary
estate, real and personal, upon certain specified trusts.
During the lives of his wife Mary and his son Mich-
ael the trustees were directed to hold and manage
such estate, to receive its income, to pay one third of
such income as should be derived from the real estate
to the wife of the testator during her life, and the
remaining two thirds, together with all the income of
the personal estate, to his five children. Direction
was also given that, upon the death of his wife and

his son Michael, there should be a division among the children of the *corpus* of the entire estate.

On April 1st, 1868, the testator's daughter, Maria Valentine, made an assignment to John S. Giles, as executor and trustee under her father's will. In that assignment her three children, Maria A. Valentine, Martina B. Valentine and Eliza R. Rabel, joined. The instrument recited that Maria Valentine was the owner of a farm in Livingston county, N. Y., on which there were several mortgages, amounting in all to more than $12,000, and that, for the satisfaction of such mortgages and for other purposes, executor Giles had agreed to lend her, out of the funds of this estate, the sum of $15,000. In consideration of this loan, Mrs. Valentine and her children assigned, transferred and set over to the executor "all their right, title and interest in and to the estate of Anthony Rabel, deceased." The executor, his successors, etc., were authorized to hold, manage and control the right, title and interest of the assignors in said estate and in the proceeds thereof until the said loan of $15,000 should be repaid, with interest, and in case of default in payment to "apply and appropriate the right, title and interest" of said parties in and to said estate, or so much thereof as might be necessary, to the payment of the principal and interest of the loan.

Mr. Giles accounted, and was discharged in 1875, in the lifetime of Michael and after the death of the testator's widow. He had from time to time, in accordance with the assignment aforesaid, applied Mrs. Valentine's share of the income of this estate to the

part payment of the interest on the $15,000 loan. During the course of his administration, he foreclosed certain mortgages given by Mrs. Valentine as security for that loan and obtained a deficiency judgment against her for $8,521.20. He continued thereafter to withhold her income as it accrued and to distribute it among the other beneficiaries, crediting her with like sums on account of interest on the deficiency judgment. In 1875, he filed an account of his administration. It was insisted, in behalf of Mrs. Valentine, that his action in retaining her share of the income of the estate and applying it toward her indebtedness should not be sanctioned, and that the assignment aforesaid was void, being in contravention of the provisions of R. S., part 2, ch. 1, tit. 2, § 63 (3 Banks, 7th ed., 2182). That section declares that "no person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest."

While this provision is in terms restricted to the income of real estate, it has repeatedly been held that the income of personalty was within the reason and policy of the statute (Graff v. Bonnett, 31 *N. Y.*, 9; Campbell v. Foster, 35 *N. Y.*, 361; Locke v. Mabbett, 3 *Abb. Ct. App. Dec.*, 71; Tolles v. Wood, 99 *N. Y.*, 616).

An auditor to whom the issues of the Giles accounting proceeding were referred reported to the Surrogate that the application of Mrs. Valentine's income was proper, and that it was made "with her knowledge and approval and in accordance with the terms of her agreement."

This report was subsequently confirmed, and by the decree entered on August 3rd, 1875, it was, among other things, adjudged that the accounts of the executor and trustee be allowed as presented.   By that decree, Mr. Samuel M. Purdy, who is now accounting, was appointed trustee in place of Mr. Giles, discharged.   He adopted the course which had been pursued by his predecessor, in retaining and distributing Mrs. Valentine's income, during the ten years that elapsed before her death in November, 1883.   In December of that year he commenced proceedings for the judicial settlement of his account, and such account was filed on February 23rd, 1886.   Maria A. Young and Martina B. Valentine, the executrices of Maria Valentine, interpose objections thereto.   They allege that the trustee " has failed to carry out the provisions of the trust contained in the will, in that whereas said trust directs the trustees to pay over to Maria Valentine, during the life of the testator's widow and testator's son, one fifth share of the net income, etc., said trustee has neglected and failed so to do."   Other objections present in various phases the same contention which was urged upon my predecessor in the accounting of 1875.

It is insisted by several of the parties hereto that the validity and effect of the assignment thus sought to be brought in question were determined by the decree of 1875 and are now *res adjudicatæ*.   They cite authorities in support of the proposition that a judgment of a court of competent jurisdiction upon a question directly involved in a suit is conclusive in a second suit between the same parties depending upon

the same question, although the subject matter of such second action be different (Doty v. Brown, 4 *N. Y.*, 71; White v. Coatsworth, 6 *id.*, 137; Demarest v. Darg, 32 *id.*, 281).

Counsel for the contestants has submitted an affidavit to the effect that in passing upon the exceptions to the auditor's report confirmed by the former decree, Surrogate HUTCHINGS made a decision in writing which is now missing from the files of the court; that in the course of that decision the Surrogate declared that the discharged trustee was justified in retaining and distributing Mrs. Valentine's income, in view of the fact that she had repeatedly inspected his books and accounts, and that, having been thus advised from time to time of his action, she should be deemed to have sanctioned it.

It is insisted that when the decree of 1875 is examined in the light of the facts above set forth, it cannot be held to contain any adjudication as to the validity of Mrs. Valentine's assignment.

The affidavit of her attorney is, I think, admissible to explain the decree (Doty v. Brown, *supra;* Dunckel v. Wiles, 11 *N. Y.*, 420; McKnight v. Devlin, 52 *id.*, 399; Wood v. Jackson, 8 *Wend.*, 45), and the decree as thus explained does not, I think, preclude these objectors from now assailing the assignment. But, for reasons that will presently be stated, I do not think it necessary to pass upon the validity of that instrument or upon divers other questions that have been ably and zealously argued by the attorneys of the various parties to this proceeding. It is claimed, for example, that the trust attempted to be created

by the testator's will is not a valid express trust under the statutes, and that Mrs. Valentine's income has never been beyond alienation ; that if the trust is to be upheld at all it was extinguished in 1855, at the death of the testator's widow, and before the assignment was executed ; and that as these executrices, daughters of Mrs. Valentine, joined in that instrument, they are now estopped from attacking its validity.

Whether these contentions are correct or unfounded is a matter that, under existing circumstances, is of no practical importance. Assuming that the trust for Mrs. Valentine's benefit was valid, that it continued in full force until the death of Michael Rabel, and that Mrs. Valentine's income in all that interval was inalienable, these facts nevertheless remain : When Michael died and the trust was extinguished, Mrs. Valentine was yet living ; she was owing this estate a large sum of money ; at her own death, in November, 1885, she was still its debtor in a sum far greater than the total income which had accrued for her benefit since the last accounting, and which had passed through the hands of the trustee. Her representatives since her death have had no lawful claim and have now no claim against the estate, except to the excess, if any there be, of the value of her entire interest therein above the amount of her indebtedness (Smith v. Kearney, 2 *Barb. Ch.*, 533 ; Wright v. Austin, 56 *Barb.*, 13 ; Springer's Appeal, 29 *Penn. St.*, 208 ; Allen v. Smitherman, 6 *Ired. Eq.*, 341).

The contestants' objections are therefore overruled.

*Second.* The trustee's account contains a statement

that one R. S. Hayden, as administrator of G. B. Hayden, deceased, to whom in his lifetime this testator's grandson, Anthony A. Rabel, assigned his share in this estate, is entitled thereto. The accounting trustee has put in evidence a deed executed on January 16th, 1874, whereby Anthony A. Rabel conveys to Gilbert B. Hayden his entire interest under his grandfather's will. The assignor has submitted an affidavit which admits the execution of such deed, but alleges that, although it is absolute on its face, it was intended by the parties thereto merely as collateral security for a loan.

Upon proof of this allegation in a proper proceeding in a court of competent jurisdiction, the assignor may, doubtless, obtain the relief which he here seeks. A court of equity will look beyond the terms of an instrument to the real transaction, and when that is shown to be one of security and not of sale, will give effect to the actual contract of the parties (Peugh v. Davis, 96 *U. S.*, 336 ; Brick v. Brick, 98 *id.*, 514 ; Ginz v. Stumph, 73 *Ind.*, 209 ; McMahon v. Macy, 51 *N. Y.*, 155 ; Hodges v. Tennessee Ins. Co., 8 *id.*, 416; Despard v. Walbridge, 15 *id.*, 374 ; Henderson v. Fullerton, 54 *How. Pr.*, 422).

But I am of the opinion that in the decree to be entered in this proceeding the assignment must be recognized as valid, and that this court has no jurisdiction either to reform it or to pass upon any equitable claim that the assignor may have against the assignee's representative (Stilwell v. Carpenter, 59 *N. Y.*, 414 ; Bevan v. Cooper, 72 *id.*, 317 ; McNulty v. Hurd, 72 *id.*, 518 ; Boughton v. Flint, 74 *id.*, 476 ; Sheridan v. The Mayor, 68 *id.*, 30).